MATTIE B. PHILLIPS ET AL. v. L. P. PALMER ET AL.

Decided May 19, 1909.

**1.—Community Property—Presumption—Statute.**

The fact that land was reciprocally possessed by the original grantee and his wife at the dissolution of the marriage by the death of the grantee, required that it be regarded as community property until the contrary was satisfactorily proved. Rev. Stats., art. 2969.

**2.—Evidence—Inference upon Inference—Marriage.**

Where the sole issue was whether or not the original grantee was married to Ann Radcliff at the date the land certificate issued to him in 1840, a deed executed by him to Ann Radcliff in 1839, offered to show that at such date they

were not married, as a circumstance from which the inference was sought to be drawn they were not married in 1840 when the certificate was issued, should have been excluded. The inference sought to be drawn is too remote and is founded on another inference, that the Ann Radcliff named in the deed is the same Ann Radcliff to whom the grantee was afterwards married. An objection that the deed named "An" Radcliff as grantee was without merit.

### 3.—Community Property—Presumption—Rebuttal.

Conceding the admissibility of the deed, the fact that the original grantee and the woman he afterwards married were not married in 1839, affords only a remote inference that they were not married in 1840, and, standing alone, could not overcome the presumption of community property arising from the facts that the land was reciprocally possessed at his death, before 1847, that the surviving wife in 1848 claimed, sold and conveyed it as sole heir, and that this was seemingly acquiesced in by his administrator who reported no assets, and that the grantee received a donation to which he would only have been entitled as a married man or head of a family.

### 4.—Same—Land Certificates.

If the land certificate was issued to the grantee before his marriage, and his marriage occurred before it was located, upon the marriage it became community property under the statute. Act of January 20, 1840, sec. 4.

### 5.—Personal Property—Land Certificates.

That an unlocated land certificate is personal property is well settled by the decisions of this State.

### 6.—Limitation—Remainderman.

Limitation does not run against the remainderman during the existence of the life estate.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Lewis A. Kottwitz* and *J. A. Gillette,* for appellants.

*Thorp & Whitehead* and *Stevens & Pickett,* for appellees.

REESE, ASSOCIATE JUSTICE.—In this case appellant, Mattie B. Phillips, joined by her husband, sued appellees in trespass to try title to recover a tract of 320 acres of land, the Charles Underton survey, in Liberty County. Defendant Swilley disclaimed as to 20 acres of the tract, claimed by defendant Palmer, and Palmer disclaimed as to all of the tract except this 20 acres. The parties respectively as to the land claimed by them pleaded not guilty, and the bar of the statute of limitations of three, five and ten years. To the plea of limitations plaintiff Mattie B. Phillips replied life estate in her grandmother, Mrs. Van Bibber, formerly Mrs. Martha G. Richardson, who died December 11, 1900. The suit was filed January 28, 1905. The case was tried with a jury, resulting in a verdict and judgment for defendants from which plaintiffs appeal.

The uncontradicted evidence shows the following facts: On January 4, 1840, the Board of Land Commissioners of Liberty County issued to Charles Underton a conditional certificate for 320 acres of land, upon which an unconditional certificate was issued October 3, 1842, patent issued to Charles Underton October 3, 1848, for the 320 acres, being the land in controversy. Another conditional certificate

for like amount was issued to him by the Board of Land Commissioners of Galveston County in May, 1839, followed by an unconditional certificate issued also on October 3, 1842, and upon this patent also issued for 320 acres of land June 9, 1848.

Underton died at some date prior to 1847. The date of his death is not shown. It only appears that L. W. Dake was appointed administrator of his estate upon the petition of Ann Underton, his widow, on June 2, 1847. The administrator was discharged upon his application, in which he was joined by Ann Underton, in 1849, upon his statement that no claims had been presented and no assets had come into his hands.

On May 24, 1848, Ann Underton, as sole heir of the estate of Charles Underton, conveyed the land in controversy to A. B. Jones. This deed was established by parol. Appellant Mattie Phillips testified as to its existence, in the possession of her grandmother, Mrs. Richardson, and to its contents, that it had been duly recorded in Liberty County after having been acknowledged, etc., and to its loss. The records of Liberty County were destroyed by fire in 1874. This deed was further established by the recitations in the deed from Jones to Chauncy Richardson, June 10, 1848. A. B. Jones conveyed the land to Chauncy Richardson by deed duly recorded in Liberty County in 1848, and containing the recitations of the conveyance by Ann Underton to Jones. Chauncy Richardson died in 1852, leaving a will which was duly probated, whereby he devised all of his property to his wife for life, with remainder to his daughter, Ann Sophia, the mother of appellant, Mattie Phillips, and the only child of Chauncy and Martha Richardson. Ann Sophia married, and died in 1881, leaving appellant Mattie Phillips her sole heir. Mrs. Richardson died in 1900.

Appellees did not undertake to connect themselves by deed with Underton, but proved a deed recorded and possession thereunder since about 1872.

The court submitted the case to the jury upon the following charge:

"You are instructed that the uncontroverted evidence in this case leaves but one issue for the court to submit to you for your determination, and that issue is, whether the land certificate which was located upon the land in controversy was issued to Charles Underton before or after he married Ann Underton (then Mrs. Radcliff).

"If you find from the evidence that Charles Underton and Ann Underton were man and wife at the time the said land certificate was issued to Charles Underton, then the land in controversy was community property of Charles and Ann Underton, and you will find for the plaintiff for the land sued for.

"If you find from the evidence that the said land certificate was issued to Charles Underton before he intermarried with Ann Underton, then the land sued for was the separate property of Charles Underton, and in case you so find you will return a verdict for the defendants."

The court thus found, as matter of law, and we think correctly, that Mrs. Underton executed the deed to Jones, and against appellees' claim under their plea of limitation, basing such finding, we assume,

upon the pendency of the life estate in Mrs. Richardson, during the existence of which the statute did not run against the remainderman, leaving as the only issue to be decided by the jury, whether the deed of Mrs. Underton to Jones passed the title, and making this to depend upon whether Charles Underton and Mrs. Underton were married at the date of the issuance of the certificate to Underton. No complaint is made of the charge of the court by either party.

The uncontradicted evidence is sufficient to show that the parties were married before Underton's death, which occurred at some date prior to 1847, and that Mrs. Underton was, prior to the marriage, the widow of one Radcliff, her name being Ann Radcliff. She had two daughters by the first marriage, but she and Underton had no children.

Under the law then existing he would have been entitled to 640 acres of land as a married man or head of a family, but only to 320 acres if single and not a head of a family. (Article 4167, Pas. Dig.) It seems to be admitted by appellees that Underton received 640 acres as a headright in the two certificates referred to for 320 acres each, but they insist that they may have been granted to him as a single man and head of a family. According to the theory of the law in the court's charge, if Underton acquired the certificate prior to his marriage it was his separate property and at his death descended to his father or mother, brothers or sisters, or their descendants, under section 10 of the Act of January 28, 1840 (1 Gam. Laws, bottom p. 308), his wife inheriting only upon failure of such kindred. If the certificate was acquired during the marriage, as community property the land descended to the wife, there being no issue, under section 4 of the Act of January 20, 1840. (1 Gam. Laws, bottom p. 178.) Thus, whether the land was community or separate estate at the death of Charles Underton became the sole issue, and this was made to depend upon the date of the marriage between Charles Underton and Ann Radcliff relative to the date of issuance of the certificate in 1840.

It was clearly shown that the land was "reciprocally possessed" by the parties at the dissolution of the marriage by the death of Charles Underton, and under the provisions of section 12 of the Act of January 20, 1840, *supra,* must be regarded as common effects or gains unless the contrary is satisfactorily proved. The provision in the Act of 1840 is the same as the present law. (Article 2969, Rev. Stats.) To rebut this presumption, and whatever force there may be in the fact that Underton received a headright donation of 640 acres given only to a married man or head of a family, and the fact that the parties were unquestionably man and wife when Underton died in 1847, and Edgar's testimony that they were married when they came to Galveston in the "forties," appellees offered in evidence certified copies of two certain deeds, purporting to have been executed by Charles Underton to *An* Radcliff, dated July 19, 1839, both executed and recorded in Galveston County. Various objections were made to the introduction of these deeds which were overruled, and appellants excepted. These objections are presented by appropriate assignments of error.

The objection that these deeds are to *An* Radcliff while Mrs. Un-

derton's name prior to the marriage was *Ann* Radcliff, is without merit. It was further objected that the evidence was irrelevant to any issue in the case and immaterial, and, in this connection, that it was not shown that the *An* Radcliff, the grantee in the deeds, was the same person who afterwards married Charles Underton.

The purpose of the evidence was to show that at that date, July 19, 1839, Underton and Mrs. Radcliff were not married, as a circumstance from which the inference was sought to be drawn that they were not married in January, 1840, when the certificate issued. We think the objection should have been sustained. The inference sought to be drawn is too remote, and besides, it is founded upon another inference, that the An Radcliff named as the grantee in the deed is the same An Radcliff to whom Underton was afterwards married.

Other objections to the deeds going to the acknowledgment thereof before the deputy clerk of Galveston County and their record there, it is not necessary to dispose of.

If, however, we are mistaken as to the admissibility of these deeds, we are of the opinion that they do not furnish that satisfactory proof required by the statute to overcome the presumption that the land which was "reciprocally owned" by the parties at the death of Underton was community property. The fact, and that is the extent to which any inference from the evidence can go, that Underton and Mrs. Ann Underton, who was his wife at the time of his death, were not married in July, 1839, affords only a remote inference that they were not married in January, 1840, and lacks much of being satisfactory proof of the fact, especially when opposed by the evidence that Mrs. Underton, in 1848, claimed, sold and conveyed the property as heir of Underton, and that the administrator of Underton seemingly acquiesced in the claim that the land was community property, by reporting that no assets of the estate had come into his hands, and by the further inference that Underton was a married man at the time the certificate was issued, arising from the fact that he received a donation to which he would only have been entitled as a married man or head of a family. No other evidence having been offered by appellees to show that the property was separate property of Underton, and to rebut the presumption that it was community, than these deeds, even if they were admissible, appellants' motion for a new trial on the ground of the insufficiency of the evidence should have been granted, and the assignment of error presenting this point must also be sustained.

We will notice only one other of the assignments of error for the purpose of indicating our views of the law upon which the rights of the parties depend. Appellants requested a charge which presented the theory that the land certificate was personal property, and there being no evidence as to when it was located, and the patent not having issued until 1848, after the death of Underton, the unlocated certificate, at the date of marriage, became community property, even if the parties were not married at the date of its issuance. This charge was properly refused, for the reason that the execution by Mrs. Underton of the deed of land in 1847 shows that the certificate had been then located, and it further appears from the recitations in the deed from Jones to Richardson that the land had been surveyed under the certifi-

cate by Halshousen on June 5, 1841, which would, in the absence of any other evidence, be sufficient to show that it had been located at that date. If, however, the certificate had been issued before the marriage of Charles Underton and Ann Radcliff, but such marriage occurred before it was located, upon the marriage it became community property under the provisions of the law then in force. By section 4 of the Act of January 20, 1840, it is provided that "all property which the husband or wife may bring into the marriage, except land and slaves and the wife's paraphernalia, . . . shall be common property of the husband and wife," and upon the death of either the remainder, after payment of debts, shall go to the survivor, if the deceased have no descendants. (2 Gam. Laws, bottom p. 178.)

So if the parties were not man and wife when the certificate issued, if it had not ceased to be personal property, by its location, when they married, it became then community property, and when located the land belonged to the community, and descended to Mrs. Underton, it having been shown that Underton left no lawful descendants.

This emphasizes the force of the objection to the introduction in evidence of the deeds from Underton to An Radcliff, executed, in any view of the evidence, two years before the location of the certificate. Doubtless upon another trial more definite evidence will be produced to show when the certificate was located than the mere recitation in the deed from Jones to Richardson.

We agree with the trial court that the evidence establishes the execution of the deed from Mrs. Underton to Jones, and also that the existence of the life estate in Mrs. Richardson prevented the running of limitation against the remainderman, and that the only issue is as to whether the land was community property or separate property of Charles Underton.

We have not thought it necessary to discuss the various assignments of error, but that it would be better, for the purpose of another trial, to state generally the principles of law that in our view are of controlling force.

That an unlocated land certificate is personal property is well settled by the decisions of this State. (Morris v. Brinlee, 14 Texas, 289; Wethered v. Boon, 17 Texas, 146; Dodge v. Litter, 73 Texas, 322.)

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*