SWILLEY v. PHILLIPS et al. (No. 6585.)

(Court of Civil Appeals of Texas. Galveston. June 17, 1914. Rehearing Denied Oct. 8, 1914.)

1. HUSBAND AND WIFE (§ 262*)—COMMUNITY PROPERTY—EVIDENCE—PRESUMPTIONS.
Under Act Jan. 20, 1840, p. 6, § 12, 2 Gam. Laws, p. 180, and Rev. St. 1895, art. 2969, providing that all the effects which a husband and wife possess at the time the marriage be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved, there was a presumption that real estate reciprocally possessed by a husband and wife at the time of the husband's death was community property, in the absence of evidence tending to show that it was acquired by him prior to his marriage, especially where it appeared that in 1839 he was granted a certificate for 320 acres of land, the amount to which a single man was then entitled, and that in 1840 he was granted a certificate for the 320 acres in controversy, and it did not appear that he was the head of a family so as to be entitled to 640 acres, unless the marriage had previously taken place.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*]

2. HUSBAND AND WIFE (§ 262*)—COMMUNITY PROPERTY—EVIDENCE—PRESUMPTIONS.
Where a conditional land certificate was issued to A. R. in 1839 prior to her marriage to U., the issuance in 1846 of an unconditional certificate for such land to "A. R." was not sufficient evidence that she was not then married to rebut the presumption that land granted to U. in 1840, of which he and his wife died reciprocally possessed, was community property; the issuance of the unconditional certificate in the name of A. R. being proper to keep the record straight, even though she had changed her name by marriage.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*]

3. WILLS (§ 800*) — ELECTION — PROVISIONS FOR SURVIVING WIFE.
A will giving to testator's wife for life all the real and personal property of which he died possessed did not attempt to dispose of the wife's share of the community property, and did not affect her community title to one-half of the land acquired by him during marriage and she did not surrender such title by accepting the life estate under the will; so that limitations ran in favor of an adverse occupant as to a one-half interest in the land, notwithstanding the suspension of the remaindermen's right of action during the existence of the life estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2074–2076; Dec. Dig. § 800.*]

Appeal from Special District Court, Liberty County; J. Llewellyn, Judge.

Trespass to try title by Mattie B. Phillips and husband against W. S. Swilley and another. From a judgment for plaintiffs, the defendant named appeals. Affirmed in part, and reversed and rendered in part.

Stevens & Stevens, of Liberty, and Tharp & Tharp, of Houston, for appellant. L. A. Kottwitz, of Houston, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by Mattie B. Phillips, joined by her husband, Morris Phillips, against appellant and L. B. Palmer. The land involved is a 320-acre survey in Liberty county patented to Charles Underton. This is the second appeal of the case. The opinion of this court on the former appeal, styled Phillips v. Palmer, is reported in 56 Tex. Civ. App. 91, 120 S. W. 911. On the trial from which this appeal is prosecuted the defendant Palmer, by a settlement between himself and plaintiffs, was eliminated from the case, and this appeal is by Swilley alone.

Appellant answered in the court below by general denial, plea of not guilty, and pleas of limitation of three, five, and ten years. Under his pleas of limitation appellant claimed title to all of the land except a tract of 20 acres claimed by his codefendant Palmer.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The trial in the court below resulted in a verdict and judgment in favor of plaintiffs against the defendant Swilley for all of the land, except a tract of 20 acres, which by agreement, was awarded to defendant Palmer. The verdict in favor of plaintiffs against defendant Swilley was returned under peremptory instruction of the trial court.

The facts disclosed by the record are as follows: The conditional certificate for 320 acres of land under which the land in controversy was patented was issued by the board of land commissioners of Liberty county on January 4, 1840, and the unconditional certificate therefor on October 3, 1842. It appears in recitals in a deed under which appellee claims that the land in controversy was located and surveyed in June, 1841. The patent was issued to Charles Underton on October 3, 1848. Another conditional certificate for 320 acres was issued to Charles Underton by the board of land commissioners of Galveston county in May, 1839, followed by an unconditional certificate on October 3, 1842, and a patent to said Underton on June 9, 1848. Underton died prior to June 2, 1847, on which date, upon the application of his widow, Ann Underton, L. W. Duke was appointed administrator of his estate by the probate court of Galveston county. There is no other evidence in the record showing more definitely the date of the death of Charles Underton. On May 24, 1848, Ann Underton, as sole heir of Charles Underton, conveyed the land in controversy to A. B. Jones, and on June 10, 1848, A. B. Jones conveyed to Chauncey Richardson.

In 1849, upon the application of L. W. Duke, in which he was joined by Ann Underton, he was discharged as administrator of the estate of Charles Underton. This application and the order granting same ·recite that no debts or claims against the estate had been presented and no property of the estate had come into the possession of the administrator; that there were no debts; and that all of the property of the estate had remained in the possession of the widow of the deceased. At the time of her marriage to Charles Underton, Ann Underton was a widow with two children; her name then being Ann Ratcliff. The exact date of her marriage to Underton is not shown.

Thomas H. Edgar, a witness for plaintiff, testified by deposition taken on August 26, 1905, that he was then 68 years old, and had resided in Galveston county all of his life; that he knew Charles Underton in the early 40's, and knew him up to the time of his death, which occurred between 1840 and 1850; that at the time he knew him Underton was married, and that his wife's name before her marriage to him was Ann Ratcliff; that at the time of her marriage she was a widow and had two children, and that Charles Underton had no children. Ann Underton died in 1866 or 1867.

On April 24, 1839, conditional certificate No. 171 for 640 acres of land was issued by the board of land commissioners of Galveston county to Ann Ratcliff. On October 24, 1846, said land board issued the following certificate:

"No. 243, Class 3rd.

"State of Texas, County of Galveston.

"Ann Ratcliff is entitled to six hundred and forty acres of land by virtue of certificate No. 171, dated 29th day of April, 1839, granted to her by the board of land commissioners for the county of Galveston, she having proved to us that she has resided in the republic of Texas three years and performed all the duties required of her as a citizen."

Chauncey Richardson died in 1852, leaving a will which was duly probated, and by which he disposed of his estate as follows:

"I give and bequeath to my beloved wife, Martha G. Richardson, during her natural life all and singular the real and personal estate of which I may die possessed, the same at the decease of my said wife, Martha G., to descend to my daughter, Ann Sophia."

Mrs. Richardson was named as independent executrix of the will without bond, and was given full power to manage the estate in such manner as her judgment might dictate. This will was probated upon the application of Mrs. Richardson. No inventory of the estate is shown, and it does not appear what, if any, property belonged to the estate in addition to the 320 acres of land in controversy. The plaintiff Mrs. Phillips is the daughter and sole heir of Ann Sophia Richardson, who died in 1881. Mrs. Richardson, plaintiff's grandmother, died in 1900. She was the wife of Richardson at the time the land in controversy was conveyed to him by Jones. After Richardson's death she claimed the land and paid the taxes thereon during her lifetime.

Appellant introduced a deed to the land from A. N. B. Tompkins to J. J. Moore executed on March 5, 1872, and a deed from Moore to himself executed February 1, 1894. The undisputed evidence shows that Moore, and after him the appellant, held continuous adverse possession of the land from 1872 to the present time, claiming it under their respective deeds. This suit was filed on January 28, 1905.

Appellant, by an appropriate assignment of error, assails the judgment on the ground that the evidence raises an issue as to whether the 320 acres of land was community property of Charles Underton and his wife, Ann Underton, and therefore the court erred in peremptorily instructing the jury to return a verdict for plaintiffs for any part of the land. Under another assignment appellant makes the following attack upon the judgment:

"The uncontradicted evidence having shown that the property in controversy was originally the community property of Chauncey Richardson and his wife, and that the said Chauncey Richardson willed his estate to his said wife for life, with remainder over to his daughter, and there being no evidence to show that the said Richardson attempted to devise the community interest of his said wife in the land in con-

troversy, and there being an entire absence of testimony showing election on the part of his said wife to take her community interest under the will, and not under the deed to her husband, as community property, and the evidence having shown that this defendant, and those under whom he held, was entitled to recover the land under the statute of five and ten years' limitation, the court erred in not directing a verdict in behalf of this defendant for an undivided one-half of the land in controversy."

[1, 2] The evidence clearly shows that the land was "reciprocally possessed" by Ann and Charles Underton at the time of the latter's death, and, in the absence of any evidence tending to show that it was acquired by Underton prior to his marriage, the presumption is that it was community property. Phillips v. Palmer, 56 Tex. Civ. App. 91, 120 S. W. 911; section 12, Act Jan. 20, 1840; 2 Gam. Laws, p. 180; article 2969, R. S. 1895.

So far from there being any evidence tending to rebut this presumption, we think the evidence tends to show that Underton received the certificate for the land after his marriage to Ann Ratcliff. In May, 1839, he was granted a certificate for 320 acres of land, the amount to which he would have been entitled as a single man. On January 4, 1840, he was granted another certificate for 320 acres, which, with the 320 previously granted to him, amounted to 640 acres, the quantity to which the head of a family was entitled. There being no evidence that Underton was the head of a family or was married prior to his marriage to Ann Ratcliff, we thing it a reasonable inference that this marriage occurred between the date of the issuance to him of the first certificate for 320 acres and the date of the second certificate for a like quantity of land, and it was his marriage to Ann Ratcliff which entitled him to receive the additional 320 acres of land. The fact that an unconditional certificate for 640 acres was issued to Ann Ratcliff in 1846, when considered in connection with the further fact that the conditional certificate for said land had issued to her in 1839, before her marriage to Underton, is not sufficient to sustain a finding that she was not the wife of Underton in 1840, when the certificate for the land in controversy was issued to him. The conditional certificate having been issued to her in her then name of Ann Ratcliff, it was but "keeping the record straight" to issue the unconditional certificate in the same name, and its issuance in that name cannot be regarded as any evidence that Ann Ratcliff had not prior to its issuance become the wife of Charles Underton.

The trial court did not err in failing to submit to the jury the question of whether the land was community property of Charles and Ann Underton, the conclusive presumption from the evidence being that it was such community property.

[3] At a recent sitting of this court we affirmed the judgment of the trial court in its entirety, but upon a further investigation of the record we have reached the conclusion that appellant's second contention before set out is sound, and must be sustained. The question of whether Mrs. Richardson elected to take under the will of her husband does not arise upon the evidence in the record. The will cannot be construed as disposing, or attempting to dispose, of her interest in the community property of said estate. No specific property is mentioned in the will, and it only refers to property of the testator, and does not attempt to dispose of his wife's share of the community. This being true, her claim under the will to all of the property owned by her husband, even if it had been shown that he owned property other than a one-half interest in the land in controversy, would not have affected her community title to one-half of said land. There being no attempt to dispose of her property by the will, she cannot be held to have surrendered her title by accepting under the will a life estate in her husband's property. The will did not call for an election on her part. She could hold her title to one half of the community and take under the will a life estate in the other half, her taking under the will being in no sense inconsistent with her claim of ownership of half of the community property. Philleo v. Holliday, 24 Tex. 45; Carroll v. Carroll, 20 Tex. 731; Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Sauvage v. Wauhop, 143 S. W. 259; Packard v. De Miranda, 146 S. W. 211.

The title to her one-half not having been converted into a life estate by her accepting under the will, the plaintiff had no right of reversion thereto. In these circumstances appellant's adverse claim and possession ripened into title to the one-half of the land owned by Mrs. Richardson and in which plaintiff had no right of reversion.

From the facts stated in the opinion on the former appeal of this case (Phillips v. Palmer, supra) it does not appear that Mrs. Richardson owned any interest in the land other than the life estate devised by her husband's will, and the statement in that opinion that the existence of the life estate in Mrs. Richardson prevented the running of the statute of limitation against plaintiffs was a correct statement of the law as applied to the facts set out in the opinion, and cannot be regarded as in conflict with the conclusion above expressed.

It follows from this conclusion that our former order affirming the judgment in its entirety should be set aside and a judgment entered affirming the judgment of the court below in favor of plaintiffs for an undivided one-half of the land in controversy, and reversing said judgment as to the remaining one-half of the land, and rendering judgment for appellant therefor, and it is so ordered.

Affirmed in part. Reversed and rendered in part.