**PRODUCERS' OIL CO. v. SNYDER.**

(No. 8445.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 21, 1916. On Motion for Rehearing, Nov. 25, 1916.)

1. CONTRACTS ☞163—CONSTRUCTION.

Where a contract is ambiguous because of apparent inconsistencies between the written or typewritten and printed parts, the written or typewritten words control; the written words being the immediate selection of the parties themselves.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 745; Dec. Dig. ☞163.]

2. MINES AND MINERALS ☞78(1)—GAS AND OIL LEASE—CONSTRUCTION—WORKING.

An oil and gas lease of 19 quarter sections held separate leases of each quarter section, requiring the sinking of a well on each quarter section to avoid forfeiture.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 205; Dec. Dig. ☞78(1).]

On Motion for Rehearing.

3. APPEAL AND ERROR ☞934(2) — PRESUMPTION.

Notwithstanding Rev. St. 1911, arts. 1990, 1991, requiring judgment to be rendered on conclusions of fact found by the judge where they are separately stated, etc., where there is no statement of facts in the record and there are findings of fact, such findings will support the judgment, although not stating affirmatively every fact necessary to support the judgment, since such facts will be presumed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☞934(2).]

Appeal from District Court, Shackelford County; Thomas L. Blanton, Judge.

Action by C. B. Snyder against the Producers Oil Company and others. From judgment for plaintiff, the named defendant appeals. Affirmed.

T. J. Lawhon, of Houston, John C. Kay, of Wichita Falls, and Walter L. Morris, of Albany, for appellant. Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

BUCK, J. On July 11, 1913, C. B. Snyder entered into an oil and mineral lease contract with M. W. Bahan, whereby Snyder granted to Bahan certain oil, gas, and other mineral rights in 19 quarter sections of land located in Shackelford county. Subsequently, Bahan transferred his lease rights to the Producers' Oil Company, appellant herein. Subsequent to July 11, 1915, and more than two years from the date of the lease contract mentioned, said Snyder filed suit against Bahan, the Producers' Oil Company, and the Texas Company, in one count in form of trespass to try title, alleging that on said July 11, 1913, plaintiff executed to said Bahan the lease on the said 19 quarter sections, and setting out said lease in the petition in full. Plaintiff further alleged that according to the terms of said lease the rights therein granted to the lessee were subject to forfeiture unless "operations for the drilling of a well for oil or gas shall be begun within three months from the time of final execution and delivery of this contract." But that it was further provided that:

"Forfeiture may, however, be saved by the grantee, and the vitality hereof be continued and maintained, notwithstanding operations be not begun within the proper time limit, provided only that for the privilege of delay in such beginning from time to time the grantee may pay as hereinafter provided fifteen hundred twenty and no/₁₀₀ ($1,520.00) dollars per quarter for a period not exceeding two years from date hereof."

It was further alleged that no operations for drilling had been made by the grantees, or any of them, on any one of the 19 quarter sections covered by the lease, and that more than two years having elapsed, plaintiff was entitled to a judgment quieting his title and removing cloud therefrom.

Defendant, Producers' Oil Company, answered that on July 8, 1915, within two years from the date of the lease contract, operations for drilling had been begun by it, and that, therefore, plaintiff was not entitled to the forfeiture claimed, and that defendant had fully complied with the terms of the contract in this respect. On the trial plaintiff conceded that as to the quarter section upon which drilling operations had been begun, to wit, the southeast quarter of section 26, Lunatic Asylum land, defendant was entitled to judgment, but insisted that the contract of lease made by plaintiff and Bahan, and the terms of which had been assumed by the transferee, the Producers' Oil Company, provided for a separate lease as to each of the 19 quarter sections, and that the obligation of the grantee to begin operations within two years in order to avoid forfeiture contemplated the sinking within two years of a well upon each quarter section as a condition of nonforfeiture.

The pleadings are voluminous, especially the plaintiff's first amended original petition, covering some 17 or 18 pages, yet the issue

between plaintiff and defendant was as to whether said written contract or lease contemplated the separate lease of each of. the 19 quarter sections and the fulfillment by the grantee of the obligations specified as a condition of nonforfeiture, or whether the said 19 quarter sections were to be considered as one tract of land and the beginning of operations within the two years upon one quarter section should be regarded as a compliance with the terms of the contract in this respect.

The cause was tried before the court without a jury, and the trial court concluded that the plaintiff's contention was correct, and gave judgment for him, quieting his title as to 18 quarter sections, and gave judgment for defendant as to the other quarter section. Defendant Producers' Oil Company, has appealed.

The record contains no statement of facts, but the court has filed his findings of fact and conclusions of law, and the original lease contract has been sent up with the record for the inspection of this court. This contract is in printed form, and certain inserts have been made in writing and by typewriter. Only those portions of the contract which we deem necessary to consider in order to determine the intention of the parties need be set out in this opinion, and where the words used are written by hand or by the typewriter they will be italicized. After the habendum clause the contract provides:

"1. The considerations of this contract are as follows:

"(a) The sum of *fifteen hundred twenty and no/100* dollars, payment whereof by the grantor is hereby acknowledged.

"4. The royalty for natural gas shall be $100.-00 per annum for each well from which gas is used off the premises, the grantor to have the privilege at his own risk and cost to make connections and use gas free of charge for dwelling *located on each quarter section, provided gas is produced on said quarter section.*

"6. Under penalty of forfeiture of the rights and estates hereby granted, operations for the drilling of a well for oil or gas shall be. begun within *three months* from the time of final execution and delivery of this contract, and, if so forfeited, the rights and liabilities of both parties shall thereupon be ended. Forfeiture may, however, be saved by the grantee, and the vitality hereof be continued and maintained, notwithstanding operations be not begun within the proper time limit, provided only that for the privilege of delay in such beginning from time to time the grantee may pay, as hereinafter provided, *fifteen hundred twenty and no/100 ($1,520.00)* dollars per quarter, for a period oı not exceeding *two* years from delivery hereof. Operations upon a well begun shall be prosecuted with diligence, unavoidable accidents and contingencies only excepted; and when a well is begun, it shall be sunk to a depth of *1,500* feet, unless oil or gas be sooner developed in paying quantities—but a well which may be lost or spoiled may be continued at another location, and to be considered the same as the original. *When operations are begun the same shall be continuous until the property is developed, unless otherwise agreed by the parties hereto. After a well is begun, no further payments in respect to delay shall be due,' on the quarter section (160 acres) upon which such well is begun and the drilling of such well shall in all* events secure said quarter section from forfeiture.

"6a. *It is expressly agreed that the drilling of well or wells will stop rental only upon the quarter section and quarter sections upon which such well or wells are located, such rental being based at $2.00 per acre per year, and deductions of rental for quarter sections upon which wells may be located shall be taken from amount of rental as recited in stipulation No. 6.*

"6b. *In consideration of moneys paid and other valuable considerations, it is expressly agreed that the grantee may at his option surrender any quarter section or quarter sections herein described, and that there will be no further payments due, and liabilities of both parties shall thereupon be ended, and the grantee agrees to execute a formal release of all such surrenders.*"

Plaintiff in his trial petition, and in the second count thereof, pleaded as follows:

"Plaintiff further represents that if he is mistaken in the construction hereinbefore given said lease contract, and if the court should hold that said lease contract, when properly construed, does not upon its face clearly. provide for the separate development of each of said 19 quarter sections of land above referred to, by beginning operations thereon for drilling a well within the time specified in said contract, and if said court should fail to hold that the failure under the circumstances alleged hereinbefore by the plaintiff (evidently meaning defendant) to begin operations on said land, except on the southeast quarter of section 26, did not have the effect to terminate said lease as to all said quarter sections except that one upon which operations were begun, then this plaintiff further alleges that the said lease contract above referred to is at least of doubtful meaning and of doubtful construction."

Plaintiff further pleaded that grantee, Bahan, who it is alleged was never the beneficial owner of the contract, but was acting for the appellant company and others, and plaintiff orally agreed upon the proposed terms of said lease, and that under said oral agreement the lease contract to be entered into was to be a separate lease upon each quarter section of land, and that each quarter section should be developed separately, or at least be subject to forfeiture for non-development, and that the lease offered by him (Bahan) did not contain the typewritten portions of paragraph "6," nor did it contain paragraphs "6a" nor "6b," nor the written interlineation in paragraph 4, and that these additions and alterations were made at the instance of plaintiff and in order to carry out the mutual understanding of the parties that the lease should provide for the development of each quarter section. Other pleadings were included in plaintiff's petition which would justify the introduction of parol testimony to explain any ambiguity which might exist in the lease contract.

[1] It is a well-recognized rule of construction that where a part of a contract is written, or typewritten, and part is printed, and the written and printed parts are apparently inconsistent, or there is reasonable doubt as to the sense and the meaning of the whole, the words in writing will control the construction of the contract. The obvious reason for this rule is that the written words

are the immediate language and terms selected by the parties themselves for the explanation of their meaning, while the printed form is intended for general use without reference to particular objects and aims. 6 R. C. L. § 237, p. 848.

The trial court found, among other things: (1) That the lease mentioned was finally executed and delivered on July 11, 1913; (2) that on September 20, 1913, M. W. Bahan transferred and assigned in writing said lease to the Producers' Oil Company, and that said transfer was duly recorded in Shackelford county; (3) that subsequent to the execution of the lease in controversy the Producers' Oil Company had bored within the radius of a mile and a quarter of the land in controversy and on two sides thereof, 15 wells for oil and gas, and that the average cost of said wells was $14,000 each; (4) that seven of said wells produced oil and gas, and that eight of them produced no oil or gas; (5) said Producers' Oil Company began operations for drilling a well on the southeast quarter of section 26, July 8, 1915, and continued the same with reasonable diligence until it had reached, at the time of the trial, a depth of 1,945 feet, at a cost of $12,000, and that so far no oil or gas had been found; (6) that no operations for the drilling of any well had ever been begun upon any other quarter section than the southeast quarter of section 26; (7) that the Producers' Oil Company had paid to plaintiff the sum of $12,160 rental for the two years in quarterly payments of $1,520, the last payment being made three months before the expiration of the two years, each payment being made in advance; (8) that the 3,040 acres of land embodied in this tract prior to the execution of the lease had been patented by the state of Texas in separate patents, each covering a quarter section of 160 acres, specifically described by field notes.

[2] We find that the contract as written is ambiguous, and that the court was authorized under the plaintiff's pleadings to admit parol testimony in order to explain the seeming ambiguity. While the printed portions of paragraph 6, as well as other printed portions of the contract, would indicate that the lease was intended to cover the 3,040 acres as a whole, and that upon the payment of the rental provided for in said paragraph and the beginning of operations within the two years, the right of forfeiture on the part of plaintiff would be destroyed, yet the typewritten portions of paragraph 6, as well as paragraphs 6a and 6b, and the written portion of paragraph 4, would indicate that the intent of the parties was that the lease should cover the 19 quarter sections separately, and that in order to avoid forfeiture on any one quarter section not only would the rental provided for have to be paid, but operations for the sinking of a well would have to be begun within the two years prescribed. There being no statement of facts in the record, we feel it our duty to impute to the court findings of fact necessary to sustain the judgment, and that evidence was introduced sufficient to sustain such findings.

Therefore the judgment of the trial court will be in all things affirmed, and it is so ordered.

### On Motion for Rehearing.

[3] Appellant refers to the following language in our original opinion, to wit:

"There being no statement of facts in the record, we feel it our duty to impute to the court findings of fact necessary to sustain the judgment, and that evidence was introduced sufficient to sustain such findings."

Appellant cites us to the cases of Chance v. Branch, 58 Tex. 490, Cousins v. Grey, 60 Tex. 346, Continental Insurance Co. v. Milliken, 64 Tex. 46, Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852, and articles 1990 and 1991, Revised Statutes, as authority for the proposition that, where the court has filed his findings of fact and conclusions of law, and in the absence of a statement of facts, "the appellant having excepted to and the appellee having acquiesced in said findings of fact, same must be looked to solely as the basis of said judgment."

Appellant presented only two assignments of error, one attacking the court's conclusions of law, and the other leveled at the court's action in rendering judgment for appellee. No finding of fact was assailed. Plaintiff's pleadings justified the admission of parol evidence to explain the seeming ambiguity in the instrument sued on, and alleged facts which, if proven, would have amply sustained plaintiff's theory that the contract as agreed upon by the parties, and as evidenced by the written instrument, contemplated the beginning of a well upon each quarter section in order to prevent forfeiture of the lease thereon. We do not think, in our holding, to the effect that we should impute to the court findings in harmony with plaintiff's pleadings, and in assuming that evidence was introduced in conformity with such allegations, we were in conflict with the cases relied on by appellant, and cited above. As said in Kimball v. Houston Oil Co., supra:

"It may sometimes happen that findings omit any mention of a fact, proof of which would be essential to the correctness of the judgment, and that, in the absence of anything said about it, such fact should be presumed; and we are not to be understood as holding that such findings are to be treated as special verdicts were formerly treated and required to state affirmatively every fact necessary to support the judgment. Thomas v. Quarles, 64 Tex. 493."

See, also, Paden, Adm'r, v. Briscoe, 81 Tex. 563, 17 S. W. 42.

It certainly is not to be required of the trial court that he shall set forth in his findings of fact every bit of probative evidence sustaining his conclusions, in order for such conclusions to be upheld. Necessarily, many evidentiary facts must be omitted. In preparing his findings of fact and conclusions of

law, the trial court need not state the evidence upon which he bases his findings or conclusions. Gordon v. McCall, 20 Tex. Civ. App. 283, 48 S. W. 1111. In the case of Oldham v. Medearis, 90 Tex. 506, 39 S. W. 919, it is held that a finding that "Oldham, being ignorant and illiterate, was not negligent in not discovering the said shortage (in the land) sooner," would not justify the Court of Appeals in treating the finding of the trial court, that Oldham was not negligent, as based entirely upon the fact that Oldham was "ignorant and illiterate." In the instant case, as evidence of the fact that the court held the contract or lease to be ambiguous, and that there was evidence supporting the theory of a separate lease as to each quarter section, it will be noted that in the findings themselves, the stenographer was directed to underscore in black ink with a pen those portions of the original lease shown to be written with pen, and to underscore in red ink with a pen those portions shown to be typewritten. The court further found that the 3,040 acres embraced in the tract had been, prior to the execution of the lease, patented in separate quarter sections. Thus is evidenced the purpose of the court to show that he reached his stated conclusions of law favorable to appellee by reason of evidence showing that the parties dealt with the land as being composed of separate tracts, and that they understood that the lease contract was severable as to the various quarter sections. As held by the Supreme Court in the Oldham Case, supra, we are not justified in concluding that the facts stated constituted the only evidence upon this issue, but we are justified in assuming that there was other evidence to the same effect deemed by the court, in conjunction with the facts stated, sufficient to establish plaintiff's contention.

The motion for rehearing is overruled.