## TICKNER v. LUSE. (No. 1066.)

(Court of Civil Appeals of Texas. El Paso. March 18, 1920. Rehearing Denied April 15, 1920.)

1. **Mines and minerals** ⟝55(2)—**Conveyance of mineral rights held not to require development.**

A conveyance of a one-half undivided interest in minerals in land *held* to require nothing of purchaser to prevent forfeiture at the end of a year, except to show that paying mineral existed or laid in place in the land, and development was unnecessary.

2. **Mines and minerals** ⟝55(8)—**Vendor of mineral rights waived performance of condition in deed.**

A grantor of an undivided half interest in minerals in land, who had a right to a return of the land if mineral was not shown to exist in paying quantities within a year, waived his right to re-entry or forfeiture by expressing his satisfaction as to what was done and minerals shown to exist, being present and having knowledge of the extent of the grantee's performance.

3. **Mines and minerals** ⟝55(2)—**Conveyance held an absolute conveyance of mineral rights upon conditions subsequent.**

A conveyance of a one-half interest in minerals, providing that the agreement should be null and void if minerals in paying quantities were not shown to exist within a year, *held* a deed absolute to an undivided fee to the mineral in the land upon a condition subsequent, and not a covenant.

4. **Mines and minerals** ⟝55(8)—**Strict construction when forfeiture is claimed for breach of condition subsequent.**

The law applies the rule of strict construction, when a forfeiture is claimed for the breach of a condition subsequent in a conveyance of an interest in minerals in land.

5. **Deeds** ⟝168—**Fee passes by deed containing a condition subsequent.**

The fee passes by a deed containing a condition subsequent, and the law requires some act on the part of the grantor for its termination.

6. **Deeds** ⟝156—**Only grantor or heirs may take advantage of breach of condition subsequent.**

No one can take advantage of a breach of condition subsequent in a deed, except the grantor or his heirs.

7. **Mines and minerals** ⟝55(7)—**Failure to develop mineral lands no abandonment.**

Grantee of a one-half undivided interest in minerals, if minerals be shown to exist in paying quantities within a year, did not abandon his interest by failing to develop the land, where he ascertained and satisfied the grantor that minerals existed in paying quantities.

Error from District Court, Eastland County; Joe Burkett, Judge.

Action by William J. Tickner against J. E. Luse and others. From a judgment in favor of the named defendant, the plaintiff brings error. Affirmed.

J. R. Stubblefield, of Eastland, for plaintiff in error.

Scott, Brelsford & Smith and R. L. Rust, all of Eastland, for defendant in error.

WALTHALL, J. This is in form an action in trespass to try title, describing three tracts of land in Eastland county by metes and bounds, and designating them as tracts 1, 2, and 3, but having for its object more to remove cloud from title, brought by plaintiff in error, William J. Tickner, against defendant in error, J. E. Luse, and Joseph H. Beal, and the unknown heirs of Joseph H. Beal, and the unknown heirs of the unknown heirs. Plaintiff in error also pleaded the 5 and 10 year statutes of limitation. He also sought to have canceled the instrument in writing under which J. E. Luse claims to have an interest in the minerals in said lands. The writing is substantially as follows:

"The State of Texas, County of Eastland.

"Know all men by these presents: That we, Willard Robinson and A. M. Robinson, his wife, of said county and state, for and in consideration that J. E. Luse will within one year from the date hereof show paying mineral on the following described land, do hereby sell and convey to said J. E. Luse and his heirs and assigns a one undivided half interest in all the mineral on and in our lands situated in Eastland county, Texas, the same being all our interest in the south half of section 66 in block 3, surveyed by the H. & T. C. Ry. Co., with the right for him or them to prospect for, mine, store and remove the said mineral on said lands; but it is understood and agreed that if the said Luse, his heirs or assigns, shall fail to show mineral from said described land that will pay to work, within one year from the date hereof, then this agreement shall be null and void; otherwise to remain in full force and effect.

"Witness our hands this 18th day of August, A. D. 1894."

---

The writing is signed by Robinson and wife and properly acknowledged. Robinson and wife are remote grantors of Tickner.

J. E. Luse, in his trial answer, in addition to a general denial pleaded that on August 18, 1894, he entered into the above written contract and deed with Willard Robinson and wife, whereby he acquired from Robinson and wife an undivided one-half interest in all the mineral in and under two of the tracts of land described in plaintiff's petition; that in November, 1900, Robinson and wife conveyed said land to W. H. Boon, in which conveyance they specially excepted the undivided one-half interest owned by him (Luse), and that said deed was duly recorded on March 29, 1906; that on April 5, 1906, Boon and wife conveyed the land to plaintiff, Tickner, in which deed Boon and wife specially excepted therefrom the said mineral rights in said land owned and claimed by him, Luse, which deed was duly recorded. Luse further pleaded that, should it be determined by the court, or the fact found, that he did not comply with his contract, and did not perform the consideration specified in the deed from Robinson and wife to him, then and in that event he alleges that the title to the one-half interest in the mineral from the Robinson and wife deed did not pass, but was still in Robinson and his heirs, and in that event he prayed that plaintiff's cause abate and the suit be dismissed; that plaintiff never acquired any right, title, or interest in and to the undivided one-half interest in the mineral owned by him (Luse), and is estopped by the record from setting up any claim thereto. Defendant Luse further pleaded the statutes of limitation of five and ten years as to two of said tracts, and disclaimed as to the third tract.

Defendants Joseph H. Beal, the unknown heirs of Joseph H. Beal, and the unknown heirs of the unknown heirs, having been duly cited by publication, and not having filed answer nor entered appearance within the time required by law, the court appointed an attorney to defend the suit in behalf of such defendants. The attorney so appointed answered by general demurrer and general denial. The case was tried without a jury, resulting in a judgment for the plaintiff in error as against all of the defendants as to all of said lands, except as to J. E. Luse, and as to Luse a judgment was rendered in his favor for an undivided one-half interest in all of the minerals in the two tracts of land in controversy.

Tickner prosecutes a writ of error to this court. The trial court did not make and file findings of fact and conclusions of law.

By the first assignment of error it is insisted that the uncontradicted evidence discloses that Luse did not discover minerals in paying quantities on the land in controversy, and for that reason was not entitled to recover. By the verbiage of the deed from Robinson and wife Luse was to "show paying mineral" on the land. The only evidence offered on the issue as to whether Luse showed paying mineral on the land was the evidence of appellee, J. E. Luse. He testified, in substance:

That in pursuance of the contract with Robinson he prospected the land for mineral at a cost to himself of about $300 and found gold, silver, and lead; that he had assays made and returned to him of the minerals found and taken from the lands; that he made a record of that with Robinson, and the two "agreed to try to get them to ship the mineral to Kansas City, but the expense was so great it took all to pay for it, and there was nothing over after it was shipped; and then Mr. Robinson and I agreed that we did not have money enough to put in a smelter, and we just agreed to let the whole thing go. We agreed that it was in paying quantities, but we did not have the money to put in a smelter, and we just agreed to let the whole thing go. * * * Mr. Robinson was satisfied with the development, the result of my development and exploration. We agreed that it was all satisfactory. * * * I prospected the land carefully. We prospected the land for gold, silver, and lead. I found iron. I found gold, silver, and lead. I think I produced some of it. We sent samples off. I have not got any of that gold, silver, or lead now, that I can produce in court here. I have not got any here. I just dug it out myself, and we had one smelter smelt. I know personally who dug that out. I dug it out myself. I can look at the indications of the rock, and tell whether or not there is gold under it. I believe I can. We sent the samples, and we got their report. I do not know whether or not that report was true. That's the only reason that I think I found—my opinion as to what I found is based on the report they made to us, and two or three different things. Q. That's the only reason you have for believing that? A. I think I know a little myself. * * * Mr. Robinson and I agreed that it was there, gold and silver, and Mr. Robinson and I agreed that it was all right. I took a good deal of that stuff out. I know that it was some kind of mineral. I know there was mineral. I do not know of my own knowledge that there was gold, silver, and lead; but I believe that. I think we found minerals in paying quantities. It was in paying quantities; the mineral would have paid to work it. * * * If we had had the money, we would have put in a smelter. Mr. Robinson did not get anything out of it. * * * After we had those assays made Mr. Robinson was satisfied; we didn't have the money to put in a smelter, and it would not pay to ship. The amount in the rock was not sufficient to pay the freight a long distance."

The development and assays testified about were in 1894. Robinson and wife, for a consideration of $1,000 conveyed the land to Boon in 1900. The deed is in the usual form of a warranty deed, conveying said land, and in the warranty part of the deed the following occurs:

"Except the rights of J. E. Luse, heirs and assigns."

Boon and wife, for a consideration of $1,-300, conveyed by warranty deed to appellant, Tickner, in 1906. In that deed in the warranty clause occurs the following:

"Excepting mineral rights, if any, of J. E. Luse, as shown by deed recorded in Book 36, p. 150, Deed Records of Eastland County."

When this last deed was executed, a request was made to Luse to release his mineral claim on the land; but he refused to do so.

[1, 2] The writing copied above does not state that the mineral values in the land should be extracted from the land, worked or developed, but requires only that paying mineral be shown to exist or lay in place in the land. The kind, quantity, or value of the mineral is not specified, other than that it must be shown to be paying mineral. According to Luse's statement, gold, silver, and lead were shown to exist or lay in place in the land. Enough of it was taken from the land to have assays made and smelted, and a report returned as to the presence in the land of the three minerals. The evidence shows that Robinson and Luse were satisfied, or at least ceased further development, with the showing made of the presence in the land of paying minerals; but for reasons stated in the evidence the parties to the contract did not proceed with the development of the minerals shown. If, in our interpretation of the clause "show paying mineral," we require that Luse further demonstrate the presence of paying mineral by extracting the mineral and shipping or disposing of same, or by himself erecting a smelter and actually smelting and disposing of the products thus produced, we would go beyond what Robinson required, and beyond what seems to us Robinson and Luse had in mind, in making and concluding the contract. We do not hold that Luse showed paying mineral on the land, but we think the evidence makes it clear that Robinson and wife accepted the showing made by Luse under his contract of the presence of paying mineral in and under the land. If the showing made by Luse was satisfactory to Robinson, where he is present and knows what has been done in the performance of the contract, whatever is not exacted in its further performance such as re-entry or a forfeiture had, is considered waived, and performance is deemed to have been acquiesced in. Especially would this be so after the time had passed when Luse might have thought to go further in his demonstration of the presence of mineral in the land. At the time of the acceptance Luse still had several months left within which to perform the condition in the conveyance.

[3-6] We have made a more extended statement from the record than seems necessary, but for the purpose of what follows, which we think conclusive of the issues presented. Aside from what we have said above, the conveyance from Robinson and wife to Luse is a deed absolute to the undivided fee in the mineral in the land upon a condition subsequent, and not a covenant. In such cases the law applies the rule of strict construction, when a forfeiture is claimed for the breach of a condition subsequent. Odessa Improvement & Irrigation Co. v. Dawson, 5 Tex. Civ. App. 487, 24 S. W. 576. In Jones v. McLain et al., 16 Tex. Civ. App. 305, 41 S. W. 714, and cases cited, it is held that, where a condition subsequent in a deed provides for a forfeiture of the grantee's title and a reversion in case of breach, the right of forfeiture is lost to the grantor by a failure to claim a forfeiture. The record shows that Robinson, if he did not acquiesce in or waive a forfeiture of the interest conveyed to Luse, he did not make re-entry or claim a forfeiture on account of the failure of Luse to show paying mineral in the land. The fee passes by a deed upon a condition subsequent, and the law requires some act on the part of the grantor in such conveyance for its termination. Stevens v. G. H. & S. A. Ry. Co. (Com. App.) 212 S. W. 639. No one can take advantage of a breach of a condition subsequent, but the grantor or his heirs. If the grantor or his heirs do not take steps to enforce a forfeiture of the estate granted on the ground of a breach of the condition, the title remains unimpaired in the grantee. Devlin on Real Estate (3d Ed.) vol. 2, § 969; Warvelle on Vendors (2d Ed.) vol. 1, § 447.

[7] The evidence, we think, sufficiently discloses that neither Robinson, Boon, nor Tickner were holding adversely to Luse, but, on the contrary, were holding in subordination to Luse's interest. The evidence does not disclose that appellant, Tickner, at any time prior to the filing of this suit, repudiated the interest of Luse, expressed in the deed under which he held title, and we think his holding was not adverse, nor in any way antagonistic, to that of Luse. Luse was not entitled to possession of the land as against Robinson, Boon, or Tickner, and, under the facts shown, there never was a time when he could have brought suit against any one of them for possession of any of the lands or interest in controversy. The contract between Robinson and Luse did not require that Luse, after securing his interest, should develop it, or do anything further with it. We see no ground on which it could be held that Luse had abandoned his interest, as claimed in one of the assignments.

The statutes of limitation pleaded by appellant have no application to the facts of this case. The evidence, we think, sustains the judgment rendered.

Finding no reversible error, the case is affirmed.