**J. K. HUGHES OIL CO. v. MAYFLOWER INV. CO. et al.**

No. 6196.

Court of Civil Appeals of Texas. Texarkana.

March 12, 1946.

Rehearing Denied April 4, 1946.

W. W. Mason, of Mexia, for appellant.

Jones & Jones, of Mineola, W. W. Harris, of Quitman, W. H. Barnes, of Terrell, V. A. Collins, of Livingston, Wynne & Wynne, of Wills Point, H. B. Houston, of Dallas, and Lasseter, Spruiell, Lowry & Lasater, of Tyler, for appellees.

HARVEY, Justice.

J. K. Hughes Oil Company filed suit in the District Court of Wood County, Texas, against Mayflower Investment Company, and others, in trespass to try title, claiming one-half the minerals under 43 acres of land in the Hazard Anderson Survey in Wood County. Pleading specially, plaintiff alleged that a sale under a certain deed of trust in the chain of title of de-

fendants was defective, and that the purchaser thereunder, and those claiming under him, acquired no title, or at most were only mortgagees in possession. The various defendants filed answers including pleas of not guilty, general denial, innocent purchaser, and the several statutes of limitation, which defenses, in view of our disposition of the appeal, are not necessary to be detailed here. At the close of the evidence, all the defendants filed a motion for an instructed verdict against the plaintiff on the grounds that it had failed to show title in itself, but had shown an outstanding superior title in the defendants; that no irregularity had been shown in the sale under the deed of trust given Fidelity Fire Insurance Company by J. C. Plocher, the original vendee of the land in question, and in addition because there had been a rescission between such parties; that plaintiff's cause of action was barred by the several statutes of limitation; and because plaintiff's suit was inequitable and had been abandoned by reason of its failure seasonably to pay off and discharge the lien against the land involved. These motions were granted by the court and the jury instructed to return a verdict in favor of the defendants, and on a cross-action for J. C. Chrietzberg against J. K. Hughes Oil Company, et al., from which action of the court the J. K. Hughes Oil Company has perfected an appeal.

On October 14, 1925, the Fidelity Union Fire Insurance Company, which in 1930 changed its name to Fidelity Union Insurance Company, deeded the land herein involved to J. C. Plocher for a consideration of $100 cash, and the execution by Plocher, payable to the vendor or order, of fourteen promissory notes for $100 each, payable on November 1, in the years 1926 to 1939, each, respectively. The deed recites that said notes are secured by a deed of trust executed by Plocher, of the same date as the deed, to H. W. Gee, Trustee, and the notes themselves retain a vendor's lien in favor of the vendor and also refer to the deed of trust to H. W. Gee, Trustee. The deed of trust states that it was intended to secure the fourteen promissory notes executed by Plocher, bearing even date there-

with, and fully describing them, but refers to them as being payable to the American Trust Company in a portion of the deed of trust, which was in printed form. In the latter part of the deed of trust, it is stated that the notes secured thereby are the same ones described in a deed from Fidelity Union Fire Insurance Company, and that said notes are payable to such company. In this latter paragraph where the printed form has the wording "having been transferred to the American Trust Company," the words in quotation are stricken out and the wording "being payable to Fidelity Union Fire Insurance Company," is inserted in typewriting just above the phrase that is marked out. On the trial it was proven that the American Trust Company at no time had any interest in the transaction and that the name of the American Trust Company inserted in the deed of trust and notices of sale was due purely to an error. H. W. Gee, Trustee, in 1931, having executed in writing his refusal to act under the terms of the deed of trust, C. H. Britton was appointed as substitute trustee, and he sold the land in question and executed a deed therefor on February 2, 1932, to Fidelity Union Insurance Company. The posted notices of sale under the deed of trust refer to the American Trust Company as payee of the notes, but also refer to the volume and page where the deed of trust is recorded.

After the deed of trust was executed by J. C. Plocher to H. W. Gee, Trustee, Plocher on October 5, 1929, sold one-half of the minerals under the land involved in this suit to Eighteen Petroleum Company, which in turn sold to the Neversuch Oil Company, which company subsequently amended its charter and became known as the J. K. Hughes Oil Company. On March 28, 1936, the Fidelity Union Insurance Company deeded all its mineral interest in the land in controversy to the Mayflower Investment Company. Prior thereto, on May 26, 1932, this insurance company had sold the 43 acre tract to T. H. Brady, reserving an undivided one-fourth mineral interest in the land. J. C. Chrietzberg was a sub-vendee under Brady. A quitclaim deed dated June 6, 1932, was

executed by the American Trust Company and J. C. Plocher and wife to the Fidelity Fire Insurance Company.

■ Determinative of all the issues in this case is the question of whether the sale under the deed of trust from J. C. Plocher to H. W. Gee, Trustee, on February 2, 1932, to the Fidelity Union Insurance Company was valid and effective to pass title to the purchaser at such sale, or whether by reason of the misnomer stated in the recital of the facts hereinabove wherein the American Trust Company is referred to in the deed of trust as being the payee of the series of fourteen notes described in the deed from Fidelity Union Fire Insurance Company, dated in 1925, such sale was void or subject to the attack made upon it. We are of the opinion, and the evidence conclusively establishes such fact, that where the name of the American Trust Company appears in the deed of trust and the subsequent instruments relating to the resignation of the trustee, the notice of sale under the trust deed, and so on, it is due entirely to an inadvertence on the part of the one that prepared the deed of trust. By no sort of reasoning could one reach any other conclusion. In analyzing the effects of such a misnomer or mistake, there are several rules of construction to which resort must be had. In the first place, if an instrument contains conflicting provisions, it is the duty of the court to harmonize the inconsistencies, if possible, and undertake to ascertain the true intent of the parties to the contract. The rule is stated in Tex.Jur., Vol. 14, page 920, § 141, as follows: "Having given full consideration to all clauses of the deed, the court may be able to harmonize its apparently conflicting provisions by adopting a particular interpretation, for it is a recognized canon of interpretation that every part of a deed should be scanned, and that construction is preferred which harmonizes apparently conflicting clauses."

In the above paragraph, in support of the text quoted, an excerpt from the case of Associated Oil Co. v. Hart, Tex.Com. App., 277 S.W. 1043, 1044, is given as follows: "Even where different parts of the instrument appear to be uncertain, ambiguous, or contradictory, yet, if possible, the court will harmonize the parts and construe the instrument in such way that all parts may stand, and will never strike down any portion except there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part. The strictness of the ancient rule as to repugnancy in deeds is now much relaxed, and the saner method is applied of permitting all parts of the instrument to stand where possible and to gather the intention of the parties from the whole instrument."

Then, in the case of Thompson v. Cobb, 95 Tex. 140, 65 S.W. 1090, 1093, 93 Am.St. Rep. 820, we find this language: "If the mortgagee, under a mortgage containing an erroneous description of the debt, may thus assert his right without reformation, it is difficult to see why a trustee, acting as the agent chosen by both parties, may not enforce it in the manner prescribed in it. His power comes from the deed of trust, properly construed with the aid of facts legally admissible in explanation of it. When the deed, considered with these facts, is found to secure a particular note, by the same process the power to sell is established, because it is given to enforce the payment of such note."

■■ Another rule quite generally applied in ascertaining the correct meaning of an instrument where there is a repugnance between a printed portion thereof and a written or typewritten part, is that the latter will control. 26 C.J.S., Deeds, p. 331, § 85, states the rule to be: "The written and printed parts of a deed are equally binding, but if they are inconsistent the former will control the latter." See also the cases of Martin v. Southern Engine & Pump Co., Tex.Civ.App., 130 S.W. 2d 1065; Producers' Oil Co. v. Snyder, Tex.Civ.App., 190 S.W. 514.

Other rules of similar import might be cited, but we deem it unnecessary to refer to them. The deed of trust in one place, which was a part of the printed form, referring to the American Trust Company as payee of the notes, and in a subsequent place referring to the notes as being the same ones given by Plocher to the Fidelity Union Fire Insurance Company, stating

that the notes are "payable to the Fidelity Union Fire Insurance Company," in typewriting, no reasonable doubt can be entertained as to whom the notes were payable or who owed the debt and mortgage. If a foreclosure suit in court had been filed under a similar fact situation, it cannot seriously be maintained that the original payee of the notes as set out in the deed, to which reference was made in the deed of trust, would not be entitled to judgment for the amount of the debt. The misnomer in question did not vitiate or nullify the rights of the payee of the fourteen notes; no one was misled by reason of the reference to the American Trust Company in the deed of trust and in the posted notices of the sale thereunder. The purchaser under the trustee's sale acquired title to the land covered by the deed of trust, and any interest in the minerals acquired by Eighteen Petroleum Company, the predecessor in title of the J. K. Hughes Oil Company, under its purchase of such minerals from J. C. Plocher in 1929 subject to the outstanding indebtedness and deed of trust against said land, was extinguished by reason of the trustee's sale.

The sale by the substitute trustee of the tract of land in question being valid, the point presented by appellant to the effect that when the Fidelity Union Insurance Company accepted a quitclaim deed from the American Trust Company and J. C. Plocher and wife, such company waived any right it might have had against anyone owning an interest in the property who did not join in the quitclaim deed is without merit. The sale by the substitute trustee, as hereinabove pointed out, was made February 2, 1932; the quitclaim deed was dated June 6, 1932. Title having already passed to the Fidelity Union Insurance Company under the trustee's sale, the subsequent acceptance by it of a quitclaim deed to the property was of no legal significance. Manifestly, the acquisition of the quitclaim deed from the American Trust Company and Plocher and wife was made in the abundance of caution to remove any question that might be raised in the premises. Certainly such action on the part of the purchaser at the trustee's sale subsequent to his purchase did not work a forfeiture of any rights acquired under the sale.

In view of our holding that the sale under the deed of trust was valid and effective to pass title to the purchaser at such sale, all other points presented by appellants become immaterial, and they are overruled. The learned trial judge correctly instructed the jury to return a verdict in favor of all the defendants, and his judgment is affirmed.