**Bert HEDICK et al., Appellants,**

v.

**LONE STAR STEEL COMPANY, Appellee.**

No. 6796.

Court of Civil Appeals of Texas.

Texarkana.

March 24, 1955.

Rehearing Denied April 21, 1955.

Vincent Ferrell, Tyler, Bryan Ferrell, Linden, Hollers, O'Quinn & Crenshaw, Trueman O'Quinn, Austin, for appellants.

Burford, Ryburn, Hincks & Ford, Dallas, for appellee.

FANNING, Justice.

This appeal involves the construction of an instrument executed in 1916 by G. H. Allen and wife delivered to Reagan S. Wyche, affecting iron ore on the Allen lands lying in Cass, Morris and Marion Counties. Eight tracts of land aggregating some 3,000 acres, were involved in the 1916 instrument, but the case at bar involves only two surveys in Morris County, claimed by appellants the "Hedick Heirs" (Stephen Stone Survey) and claimed by appellants the "Little Heirs" (G. H. Allen Survey), said appellants being heirs of G. H. Allen and wife. Appellee herein, Lone Star Steel Company, is the successor in title to the rights of Reagan S. Wyche, and claims ownership to the iron ore on the said Allen lands. There were two trespass to try title suits originally, but upon agreement of the parties the trial court consolidated the causes and the causes proceeded to trial with the heirs of Allen and wife as plaintiffs and Lone Star Steel Company as defendant.

. The 1916 instrument in question is in the form of a warranty deed and is called a warranty deed on the back thereof and for the sum of $6,000 cash purports to convey

to Reagan S. Wyche, Trustee, quoting from the instrument as follows:

"* * * all and singular the iron ore, mines, veins, seams, and pockets of iron ore, and all manner of iron ore in its natural state, in, on or under the lands and premises hereinafter described—that is to say so much of said acreage as contains iron ore in paying quantities, to be determined by survey of at the expense of the grantee—together with the full right and power of making, sinking, maintaining and using all such pits, shafts, drifts, levels, drains, watercourses and reservoirs, and of constructing, erecting, maintaining and using all such railroads, tramroads, and other roads, bridges, culverts, buildings, works, engines, machinery and conveniences whatsoever, and doing all such things in, under, upon, through or over the said lands, or any part thereof, as may be necessary or convenient for searching for, working, getting, preparing, carrying away and disposing of said mines, veins, seams and pockets of iron ore, and the iron ore to be gotten therefrom and from lands adjacent thereto, or beyond the same, in which grantee, his heirs or assigns, may have or hereafter acquire an interest." (Here follows a description of eight tracts of land in Cass, Marion and Morris Counties, Texas.)

(Note the above-quoted provision of the instrument is a printed provision.)

Following said land description there appears a separate typewritten, clipped-on, additional provision which reads as follows:

"This is intended to convey the Iron Ore on all the lands owned by G. H. Allen in the counties of Cass, Morris and Marion. It is agreed and understood by and between the parties hereto that the land on which residences and out buildings are situated shall be exempt from this sale, and if any damage should accrue to any growing crops, Grantee shall pay fair valuation for same, the damage to be determined by *arbiration*. The Grantor to pick one man and the Grantee to pick one man and then those two men to pick the third man—their decision to be final."

The remaining portion of the instrument follows the standard warranty deed form, and is shown to have been executed and acknowledged by Allen and wife with all the legal formalities, and the instrument shows to have been duly recorded in Morris and Cass Counties in 1924.

In answer to four special issues the jury found: (1) That a survey was made to determine what constituted iron ore in paying quantities; (2) that the survey was not made within four years after the instrument of May 18, 1916; (3) that the survey was not made within a reasonable time after May 18, 1916; and (4) that iron ore in paying quantities was situated on the land on May 18, 1916. The trial court entered judgment for appellee, awarding title to the iron ore (and appurtenances) on the lands involved here, and overruled appellants' motion for new trial. Appellants have appealed.

Appellants present four points where they contend (in essence) that: (1) The description contained in the deed is not sufficient to describe the land sought to be conveyed under Art. 3995, V.A.C.S.; (2) if any interest was conveyed by the deed it was merely an equitable right to enter and make the survey called for, and to compel an additional conveyance of the acreage containing iron ore in paying quantities, and such right is now lost by laches; (3) if either a legal or an equitable title to any of the iron ore passed by the deed under which appellee claims, it was only such iron ore as was merchantable at the time of the conveyance, that none of the iron ore was merchantable at the time of the deed in 1916 and that no iron ore passed under the deed; and (4) that the trial court erred in not submitting to the jury a correct definition of the term "paying quantities," etc.

Appellee contends that the instrument in question was a deed to the iron ore under the land in question, that the printed clause calling for a survey was merely a covenant or at most a condition subsequent personal to grantors and not extending to their heirs, which had long since been waived by grantors and their heirs. Appellee also contends specifically that the typewritten addenda to the deed (above quoted) controls over the printed provision with respect to the survey feature, and is not language pertinent to a mere equitable right but would properly apply only to a grant of title. Appellee also says that the jury found that there were paying quantities of iron ore on the land in question in 1916 and that the trial court's definition of the term "paying quantities" was correct.

All of the parties to the original deed were dead at the time of the trial of this case. It is undisputed in the record that neither G. H. Allen, who signed the original deed to Reagan S. Wyche, nor H. Lane Allen, his son who had signed the contract to convey as attorney in fact for G. H. Allen, ever questioned the conveyance. Neither of these men ever made the contention that the deed did not convey the iron ore under the property described. No claim was made either by G. H. Allen or his heirs before the year 1949.

It is undisputed in the record that the consideration of $6,000 for the deed in question was paid. It was also shown in the record that in order to precisely fix the boundaries on the surface of the deposits of iron ore, it would be necessary to drill test holes not over 100 feet apart; that such a program of test drilling on the land in controversy in this case would require 2,000 test holes and would cost at least $200,000 or maybe more; that such a testing program would require at least a year and maybe two years; and that such a testing program would not be feasible long in advance of mining. There is other evidence in the record with reference to surveys actually made many years prior to the trial.

Mr. Drescher, a geologist and mining engineer, testified that he worked at investigating the iron ore deposits on the land in question beginning in 1941. At that time he found evidence of old test pits on the land. In fact, he went down in some of them on ropes or ladders. Some of these old pits were 20 feet deep or even deeper. Most of them were from 30 inches to 3 feet around and some of them were rectangular. Some of the pits had been in existence for quite a long time. Mr. James M. Clements, a witness for defendant, testified that he made two maps of the land in controversy and in connection therewith, surveyed the land on the ground. He found certain trenches and test pits during his survey. In some test pits, there were saplings with complete network of roots inside the pit. One particular pit had a pine stump six or eight inches in diameter growing from the inside.

G. H. Allen died about 1927. Mr. Joe Lane Allen testified that he first knew someone was claiming the iron ore in 1942.

There are various rules of construction governing the construction of deeds which we think are pertinent here, as follows:

1. The cardinal rule for the construction of deeds is that the intention of the parties is to be ascertained and given effect, as gathered from the entire instrument, together with the surrounding circumstances, unless such intention is in conflict with some unbending canon of construction or settled rule of property, or is repugnant to the terms of the grant. 14 Tex.Jur., sec. 132, pp. 911–912.

2. Since the language of a deed is that of a grantor, if there is any doubt as to its construction it should be resolved against him and in favor of the grantee. 14 Tex.Jur., sec. 138, p. 138; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355.

3. As a corollary to the rule that a deed is to be read against the grantor, the courts hold that if the language employed

in a deed leaves in doubt the grantor's intention, it should be construed so as to confer upon the grantee the greatest estate that the terms of the instrument will permit. This rule, however, is subordinate to the rule that conflicting provisions must be harmonized where possible. 14 Tex.Jur., sec. 148, pp. 926–927; Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318; Young v. Rudd, Tex.Civ.App., 226 S.W.2d 469, writ ref., n. r. e.

4. A construction is favored which vests the estate in the grantee as speedily as the language of the deed will permit, because this is the policy of the law. 14 Tex.Jur., sec. 148, p. 928; Bryson v. Connecticut Gen. Life Ins. Co., Tex.Civ.App., 196 S.W.2d 532, writ ref.

5. The law does not favor forfeitures and therefore, a construction of a deed will be adopted if possible to avoid a forfeiture. Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451; Knight v. Chicago Corp., Tex.Civ.App., 183 S.W.2d 666, affirmed 144 Tex. 98, 188 S.W.2d 564.

6. A sound rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it. 14 Tex.Jur., sec. 137, p. 915; Vineyard v. O'Connor, 90 Tex. 59, 36 S.W. 424; Rhoden v. Bergman, Tex.Civ. App., 75 S.W.2d 993, writ ref.

7. A construction of a provision in a deed as a covenant is preferred over its construction as a condition subsequent. Likewise, the interpretation as a condition subsequent is less objectionable than its construction as a special limitation. Knight v. Chicago Corp., supra; City of Dallas v. Etheridge, Tex., 253 S.W.2d 640.

8. *Finally, it is a well-settled rule of construction that in case of conflict, the written or typewritten part of an instrument controls the printed portion.* (Emphasis added.) J. K. Hughes Oil Co. v. Mayflower Investment Co., Tex.Civ.App., 193 S.W.2d 971, writ ref.; Producers Oil Co. v. Snyder, Tex.Civ.App., 190 S.W. 514.

The Supreme Court of Texas held in the case of Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318, 320, that where the consideration for a deed includes money which is paid and an agreement by the grantee to do certain things, such agreement does not impose a condition subsequent. In the cited case the deed was given for $10 and the agreement that the premises should be used for church purposes only and "that in case the same is abandoned as such that the title shall be revested in said H. T. Elder." The court held that the condition subsequent was confined to the abandonment of the use of the land for church purposes and that the agreement to use the property "for church purposes only" was not a condition subsequent so as to prevent the drilling of an oil well thereon. In this connection the court said:

"It will be observed that the consideration for the conveyance in question is threefold in its nature: (a) the sum of $10; (b) an agreement that the premises should be used for church purposes only; and (c) that in case the same is abandoned as such, the title shall revest in H. T. Elder.

"There are many authorities to the effect that a recital in a deed of conveyance that it is made upon a money consideration, and a further consideration that the grantee shall do certain things, or that only a certain use shall be made of the property, does not impose a condition subsequent." (Citing authorities.)

In Wisdom v. Minchen, Tex.Civ.App., 154 S.W.2d 330, 336, writ ref., w. o. m., it is stated:

" 'It is universally held that a grantor entitled to re-enter or forfeit an estate on breach of condition, who does not exercise his right when facts within his knowledge occur that would entitle him to do so, has waived his right or is estopped from exercising it, in all cases in which, after breach of condition, he permits the grantee, without objection, to prosecute the en-

terprise, and expend large sums of money in so doing, which must be lost to the grantee if a forfeiture be subsequently allowed. If a grantor, so situated, on breach of condition, desires to terminate an estate, good faith requires him to act promptly, and on failure to do so he should not be permitted to reap the benefit of money subsequently expended or labor bestowed, when by his failure to assert his right he induced a grantee to believe that he would not, and to continue the expenditure of money.'" (Citing authorities.)

In States Oil Corp. v. Ward, Tex.Com. App., 236 S.W. 446, 447, the deed in question contained a reservation which read as follows:

" 'But it is expressly agreed and stipulated that this deed is made subject to the following rights of the said Mining Company, each and all of which rights are hereby reserved and are not to pass by this deed. 1. The Central Texas Mining, Manufacturing & Land Company reserves the right at all times hereafter to enter upon the land hereby conveyed and prospect for and make surveys at will on any part of it for coal, minerals, stone, or any other valuable deposit, and to open up on said land and operate with machinery, appliances, and attachments, which it may deem necessary, mines, borings, and quarries, and the coal, minerals, stone, or other valuable deposits found in and taken from all such mines, borings, and quarries, shall be the property of said Central Texas Mining, Manufacturing & Land Company,' etc."

It was contended that the reservation did not retain the title to the minerals in place but merely prescribed the steps by which the minerals could be taken from the ground and become the property of the grantor. The Commission of Appeals rejected this contention, holding that the reservation withheld the title to the minerals in place, saying:

"Certainly, if there were no coal, minerals, stone, or other valuable deposits on or in the land, then there would have been none to convey. But, if there were any of those substances present in the land, and search for them could have developed that fact, the language of the instrument reserving them from the sale was just as potent to reserve the present title in the grantor as if the conveyance had been made to him. The expression 'and the coal, minerals, stone, or other valuable deposits found in and taken from all such mines, borings, and quarries shall be the property of said Central Texas Mining, Manufacturing & Land Company, and it shall have the right to remove same,' is clearly a reservation of present title, and evidently was not intended to mean a mere attempt to prescribe the steps by which they might be taken from the ground. There was nothing stipulated as a condition precedent for the Mining Company to pay or to perform in order to vest title in it, and for it to earn the title to the minerals. It is true that there was a provision in the reservation giving a method of making locations and providing when such locations were made that a failure to proceed with operations for three and five years should be considered as abandonment of such specific location, but this was a condition subsequent, and applied only to locations made, not to the reservations as a whole, and was evidently intended only as a protection to the surface owner against repeated entries without a continuance of operations."

Also see Tickner v. Luse, Tex.Civ.App., 220 S.W. 578, writ ref.

■ It is our opinion that the unqualified statement in the typewritten addenda, "This is intended to convey the iron ore on all the lands owned by G. H. Allen in the Counties of Cass, Morris and

"Marion," is sufficient alone to constitute a good and sufficient description of the property in controversy here. 14 Tex.Jur. p. 1015; Lyle v. McDowell, Tex.Civ.App., 116 S.W.2d 1109, error dis.; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940; Brigham v. Thompson, 12 Tex.Civ.App. 562, 34 S.W. 358; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447; and Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.2d 452. It is also our further view that when this addenda, the metes and bounds description in the deed, and all of the provisions of the deed are construed together, that both the metes and bounds description and the addenda description constitute a good and sufficient description of the property in controversy here.

 The instrument executed by Allen and wife is in the form of a warranty deed, is called a warranty deed on the back thereof, and has all the attributes of a warranty deed. Allen and wife received $6,000 cash for executing same. There is no provision in the deed that title should terminate if the survey was not made, or for any other reason. Clearly the instrument is not a "lease" nor does it provide for the payment of mining royalties. Also the grantee, Wyche, was granted rights of ingress and egress, to build roads and machinery, etc., and there was an agreement excepting residences and outbuildings and providing for damages to crops, arbitration, etc., which language is pertinent not to a mere equitable right but to a grant of title in and to the land. Construing the deed from its four corners, and particularly considering the typwritten addenda above referred to, and in the light of the rules of construction and authorities cited above, it is our opinion that the deed in question was a fee-simple conveyance of the iron ore (with the appurtenances mentioned in said deed) in, on or under the lands owned by Allen and wife in Cass, Morris and Marion Counties, Texas (which lands were also particularly described by metes and bounds in said deed), and was not merely an "equitable right" as contended by appellants.

Considering the record as a whole and all of the points and counterpoints raised, it is our opinion that the trial court correctly rendered judgment for appellee.

The judgment of the trial court is affirmed.

DAVIS, J., did not participate in this decision.