### WILLIAM R. SMITH V. MATTHEW TALBOT AND OTHERS.

It has, on some occasions, been suggested that the Act of the 19th January, 1841, creating a system of bankruptcy, &c., was in conflict with the Constitution of the Republic. But, admitting that the Bankrupt Act is constitutional, the question is, &c.

The Bankrupt Act is deficient in details, but its intention that the creditors should present their claims promptly, viz: within the limits of one year, is manifest. The trustees were required to publish a notice that if claims against the trust estate were not presented within one year from the day the trust estate was committed to them, they would be barred.

The fact that a debtor who seeks to avail himself of the benefit of the Bankrupt Act, fraudulently conceals and withholds the greater portion of his property, whereby the probable percentage to be paid his creditors is rendered so small that one does not think it worth his while to present his claim within the year to the assignees, is no answer to the bar of the Statute.

An assignment under the Bankrupt Act transfers the whole estate of the debtor, whether it be described in the deed or not.

Had the plaintiff presented his claim, he might have been entitled, under the assignment, to the benefit of the debtor's property subsequently discovered. But as he did not present his claim, it was barred by virtue of the Act, and he can recover nothing under the assignment.

Admitting that the discharge (in bankruptcy) may, on proof of the fraudulent acts of the debtor, become void and worthless, so as to interpose no effectual

bar against the action of the creditor, the question is, whether it stopped the running of the Statute of Limitations, until the fraud was, or might by reasonable diligence have been, discovered.

It will not be necessary, in this case, to discuss the question whether, under the blended systems of Law and Equity in this State, it be competent to allow an exception to the Statute of Limitations on the ground of fraud, this not being expressly provided for by the Statute.

Where fraud is allowed as an exception to the Statute, the rule is that the right of action shall be deemed to have accrued to the plaintiff at the time when such fraud shall be, or by reasonable diligence might have been, discovered.

Upon the whole, admitting that the assignment was subject to attack, on the ground of fraud, and that the fraud in procuring the discharge and thus preventing the plaintiff from bringing his suit, would stop the running of the Statute, so long as the fraud was not and could not by reasonable diligence have been detected, yet we believe this suit should have been brought, at the latest, within four years after the assignment in bankruptcy. The plaintiff had abundant means of detecting the fraud, from the date of its perpetration.

Error from Matagorda.  Tried below before the Hon. John Hancock, Judge of the Second Judicial District.

This suit commenced March 1st, 1851. Lann and the surviving trustee of Talbot, and the representatives of Mrs. Talbot, were joined as defendants. The petition sought to make the property a part of the trust fund, as well as to recover judgment for the debt. The facts are fully stated in the Opinion.

*Sherwood & Goddard* and *Denison*, for plaintiff in error.

*Wilson, Quinan* and *Jones*, for defendants in error.

HEMPHILL, CH. J. The petition states, in substance, that on the 28th day of January, 1836, Matthew Talbot executed his two promissory notes to Wm. R. Smith, the plaintiff, each for the sum of thirty-five hundred dollars, payable, one on the first March, 1838, and the other on the first of March, 1839 ; that

the notes were executed and delivered in the State of Alabama, and that no part of them has been paid ; that the said Talbot and one James W. Lann, who were partners, contriving together to defraud the petitioner, and to hinder and delay him in the collection of his debt, did, without the knowledge of the petitioner, remove themselves and their property from the State of Alabama to the then Republic of Texas, after the execution of the said notes and before the same became due ; that at the time of the execution of said notes, the said Matthew Talbot was married to Harriet S. Talbot ; that the community property was liable to said indebtedness ; that at the time said Talbot removed from Alabama to Texas, he took with him a large number of negro slaves, claiming them as his own property ; that Talbot had purchased a large number of these slaves from the plaintiff, and these notes were given for the price or purchase money ; that after Talbot arrived in Texas, intending to defraud the plaintiff in the collection of his debt, he fraudulently procured a conveyance of certain of said slaves to the said Harriet S. to be executed to her by one Wm. S. Pledger and placed upon record in Matagorda county, which appears from an exhibit that is filed (and which shows that the conveyance was dated 26th October, 1839, and was recorded on the 9th March, 1840 ;) that the said slaves are now in the possession of the said Talbot, and a part of them are the slaves purchased from the plaintiff ; that Lann and Talbot purchased before the 4th of October, 1841, with joint funds, a large quantity of real estate in the town of Matagorda, and with intent to defraud creditors, and especially the plaintiff, conveyed the said property in secret trust to one Hezekiah A. Nichols, by deeds of the dates of the first of June and 16th August, 1838, and of the 19th October, 1839 ; (we may here remark that these deeds were recorded about the time of their dates, as appears from the exhibits in the other case between the parties to this suit ;) that during the progress of these alleged fraudulent proceediegs, the said Talbot, with intent to

deceive the petitioner, fraudulently misrepresented that he was wholly unable to pay the debt of plaintiff, but that he was willing and would at some future time pay the same, and certain letters from Talbot to the plaintiff are filed as exhibits ; that all these frauds were preparatory and auxiliary to a greater and more mischievous fraud, by which Talbot, on the 4th October, 1841, procured his discharge in bankruptcy. The plaintiff charges that the assignment in bankruptcy was false and frudulent ; that all the proceedings, acts and doings of Talbot, to procure his discharge, were false and done with intent to defraud creditors ; that the assignment was fraudulent in that it did not assign any of the lands fraudulently attempted to be conveyed to Nichols ; that the whole of this was held in secret and fraudulent trust by the said Nichols, for the benefit of the said Lann and Talbot ; that large portions of this property were in May, 1843, pretended to be reconveyed by the said Nichols to the said Lann and to the said Talbot, and also to Harriet S. Talbot. The petition also alleges other conveyances of the said real estate by the said Nichols for the benefit of Lann and Talbot, and charges that the assignment in bankruptcy was also false in that it did not assign any of the negro slaves mentioned in the bill of sale made by Pledger to Harriet S. Talbot ; that if the said bill of sale be not false and collusive, then the slaves are community property, and as such should have been assigned with the other estate of the bankrupt. But if it be false, then the slaves are still the property of Talbot and should have been assigned with the rest of the estate. The plaintiff also charges fraud in the purchase of a tract of land from one Duke, by Talbot, in the name of his wife, Harriet S., about the time of his taking the benefit of the bankrupt Act, and which land was paid for with proceeds of property fraudulently withheld from his assignment ; that the land is now in the possession of the said Matthew. The plaintiff alleges that in legal effect and in equity and good conscience, all of this property, with its profits

and increase, constitute a trust fund for the payment of debts owing by Talbot at the time of his discharge in bankruptcy, and that the fraudulent actings of the said Talbot, Lann and Nichols, in and about concealing the real estate by these fraudlent conveyances, and also the frauds in relation the slaves, and also the purchase and payment of the land from Duke, did not come to the knowledge of the plaintiff until within three months previous to filing the petition ; that by the fraudulent assignment of so small an amount of property, of such small value, and by Talbot's fraudulent misrepresentations of his inability to pay, and his willingness when he should become able, &c., &c., the plaintiff was prevented from presenting his debt to the trustees for their allowance. The petition then prays for relief.

The defendant Talbot and Lann pleaded by demurrer the Statute of Limitations.

One of the trustees in bankruptcy, who was cited, pleaded that due notice had been given of his appointment ; that he has no knowledge of the claim sued on, as it was not presented to the trustees ; that he has in his hands no effects of the estates of either Lann or Talbot, nor has he had for nine years last past. Denies all knowledge of the fraud, &c.

The demurrer of defendants to the petition was sustained, and the plaintiff has brought up the cause by writ of error.

The petition was filed on the first of March, 1851, more than nine years after the discharge in bankruptcy ; and the only question raised and discussed in this Court is, whether the demand of the plaintiff is barred by the Statute of Limitations.

It has, on some occasions, been suggested that the Act of the 19th January, 1841, creating a system of bankruptcy, &c., was in conflict with the Constitution of the Republic. If so, the plaintiff would be clearly barred of any remedy upon the notes. For if the law were unconstitutional, the discharge in bankruptcy would have been no protection to the defendant, nor would it have been any legal impediment to prevent the

plaintiff from maintaining his action ; consequently the suit should have been brought within the time prescribed by the Act of Limitations.

But, admitting that the Bankrupt Act is constitutional,—and the proceedings in this cause are based on the correctness of that supposition,—the question whether the plaintiff be now entitled to recover and have satisfaction for the amount of the note, may be considered as assuming a two-fold aspect, viz :

1st. Whether he can now come in and claim any benefit under the assignment in Bankruptcy, and

2d. Whether, notwithstanding the great lapse of time, he may now prosecute an action and recover judgment upon the notes.

And it would seem vey clear, that he could not now claim any benefit under the assignment. The Bankrupt Act is deficient in details, but its intention that the creditors should present their claims promptly, viz : within the limits of one year, is manifest. The trustees were required to publish a notice that if claims against the trust estate were not presented within one year from the day the trust estate was committed to them, they would be barred. (Hart. Dig. Art. 100.)

The fact, as alleged, that the debtor did not specify all his estate in the deed of assignment, but only a small portion of it, does not excuse the neglect of the plaintiff to present his claim ; nor will it prevent the bar of the Bankrupt Act from being complete within the twelve months. A creditor cannot set up the supposed or apparent inability of his debtor to pay, as a reason for not bringing suit within the term of limitation; and it does not matter, that the apparent insolvency of the debtor may be produced by his fraudulent concealment or disguise of the greater portion of his property.

Where fraud is allowed as an exception to limitations on actions for the recovery of money demands or damages, it is in cases where it is concealed from the plaintiff that he has a cause of action ; and not where there is a fraudulent repre-

sentation by the debtor of his inability to pay.   If  the credi-
tor knows that he has a cause of action, he  must  sue  before
the bar of the Statue, whether he make much  or  little  by his
suit, and whether, in his opinion, the debtor  be  solvent or in-
solvent.

So under an assignment in  Bankruptcy, all  creditors  must
present their claims, whether they would receive ten cents or
one hundred cents on the dollar ; and the fact that the creditor
may believe that he would receive only ten cents, and that this
belief was induced by the fraudulent misrepresentations or acts
of the debtor, when in fact he might have  recovered  the  full
amount of his claim, had the debtor surrendered  the whole of
his property, is no excuse for his not presenting his demand as
required by law.

An assignment under the Bankrupt Act transfers the whole
estate of the debtor, whether it be described in  his  deed  or
not.   The trustees are authorized to  recover  and  receive  as
well that which is not, as that which is described in the deed.

Had the plaintiff presented his claim, he  might  have  been
entitled, under the assignment, to the benefit  of  the debtor's
property subsequently discovered.  But as he did not present his
claim, it was barred  by virtue of the act, and  he  can  recover
nothing under the assignment.

The next point for  consideration  is, whether  the  plaintiff
can now prosecute an action and  recover  judgment  upon  the
notes.   The plaintiff alleges that the  defendant  fraudulently
concealed and withheld a large portion of  his  property from
the assignment, and that his discharge was obtained by fraud.
The first inquiry under this head is, whether the discharge can
be impeached and treated as null and  void, on  the  ground of
the fraudulent concealment by the debtor, of his property, and
his fraudulent omission [to  specify  that  in  the  deed.   This
might admit of some question.   The whole of  the property of
the debtor passes by the assignment, whether it be or  be  not
described in the deed of the bankrupt.   The trustees  can  sue

for and recover all of this property, whether enumerated or not in the deed, or whether fraudulently, collusively or colourably conveyed or covered with intent to hinder and delay the creditors of the bankrupt. The debtor, on taking the oath and signing the deed of conveyance, is entitled to his discharge, exonerating him from all his existing debts and pecuniary liabilities, and from any suit or proceeding by hi- creditors, and the discharge has this effect before all courts and places, &c. (Hart. Dig. Art. 96.) Here it will be seen that creditors, through the trustees, have ample power to reduce all the property of the debtor into possession, and that the latter has a full discharge, without any exception, from all his debts and pecuniary liabilities ; and it might be contended, with some force, that the law did not intend that the debtor should be again harassed with suits at the pleasure or caprice of all or any of his creditors who might make charges of fraud as a pretext for their suits ; but that they should seek their redress through the trustees who had full power to subject all the existing property of the debtor, that being the only property which, under the policy of the Bankrupt Act, could be made liable for the debts.

The discharge under the Bankrupt Act of the United States of the year 1841 is also a complete bar to all suits against the debtor, but it is expressly made subject to impeachment for fraud or willful concealment by the debtor, of his property or rights of property. (Vol. 5, U. S. Statutes, p. 444.)

But such exception to the discharge, under the Bankrupt Act of Texas in 1841, is not made in terms ; and if allowed, it must be on the general principle that fraud vitiates all transactions tainted by it, and that for fraud even the judgments and decrees of Courts may be avoided.

Admitting that the discharge may, on proof of the fraudulent acts of the debtor, become void and worthless, so as to interpose no effectual bar against the action of the creditor, the

question is, whether it stopped the running of the Statute of Limitations, until the fraud was, or might by reasonable diligence have been discovered; or whether the Statute continued to run as though the bar of the discharge had not been interposed; or, in other words, whether the Statute runs from the commission, or from the discovery of the fraud, or the time when, by the seasonable attention of a prudent man, it might be discovered.

It will not be necessary, in this case, to discuss the question whether, under the blended systems and jurisdictions of law and equity in this State, it be competent to allow an exception to the Statute of Limitations on the ground of fraud, this not being expressly provided for by the Statute. For if the exceptions be admitted in this case, on the principles and with the limits recognized by Courts where such exception is allowed, it cannot avail the plaintiff, as will hereafter appear upon a review of the facts set forth in his petition.

Where fraud is allowed as an exception to the Statute, the rule is that the right of action shall be deemed to have accrued to the plaintiff at the time when such fraud shall be, or by reasonable diligence might have been, discovered. (Angell on Limitations, 195.) Even with this restriction, the exception is a serious inroad on the policy of the laws of limitation, which is to fix certain periods within which suits shall be brought, and thus to shorten titles and make them certain. These cannot be made certain unless the time at which causes of action accrue is definite; and that can in no sense of the word be called definite, which depends on the pleasure of a plaintiff, who may fix his discovery one year, or it may be ten years after the commission of the alleged fraud. Hence, in some measure to remedy the evil flowing from the license given the plaintiff to fix, in a great measure, the time at which the cause of action accrued to him, there is the proviso that a party affected by fraud, shall be presumed to have actual knowledge of it at the time when, by reasonable care, it might

have been detected by him. (McDonald v. McGuire, 8 Tex. R. 370.)

Now, what are the facts charged in relation to the frauds and fraudulent concealments of Talbot in the transactions stated in the petition? He is charged with fraud in not specifying in the assignment the slaves conveyed by Pledger to Harriet S. Talbot. But the plaintiff had full knowledge in relation to these slaves. The most of them were purchased by Talbot from the plaintiff when they were living in Alabama. These notes were given by Talbot to the plaintiff in payment for these slaves. They were claimed by Talbot while he lived in and when he left Alabama. The conveyance of these slaves by bill of sale from Pledger to Harriet S. Talbot was made in 1839, and recorded in 1840, eighteen months before the assignment in bankruptcy. Talbot was deeply indebted when he left Alabama, and it would seem that if his omission to specify these slaves in the assignment be an act of fraud, it was one peculiarly within the knowledge and cognizance of the plaintiff; one which, from the circumstances, must be presumed to have been known to him. To say the very least, his suspicions should have been excited and aroused to inquiry; and it must be presumed from the circumstances, that this fraud, if it existed at all, was so glaring and flagrant that it could not escape detection.

In relation to the lots in the town of Matagorda, the purchases were made by Lann and Talbot in 1837 and 1838, and by Lann in 1839 and 1840. Conveyances were made by these parties to Nichols in 1838 and 1839. These were placed on record. The transactions were not secret, and to a person who knew, as did the plaintiff, that Lann and Talbot were much indebted, they presented a very suspicious aspect; but when Nichols, within less than two years after the discharge of the defendants in bankruptcy, commenced reconveying the lots to Lann and Talbot, viz: in September, 1843, by deeds which were placed on record, the plaintiff ought to have made

an effort to unveil the frauds enveloping the transactions ; and if they were fraudulent, the evidence to establish such fraud could doubtless have been easily procured. *Prima facie*, they were liable to suspicion ; and it would not have required much weight from additional circumstances, to have established the conclusion that transactions which had such badges of fraud, were in fact fraudulent.

There are some letters of Talbot to the plaintiff appended to the petition. The whole correspondence, that is, the letters from the plaintiff, are not inserted ; but there is one inference plainly deducible from the answers of Talbot, viz : that the plaintiff had but little confidence,—at least at the commencement of the correspondence,—in the integrity of the defendant. He was not in such a frame of mind towards the defendant,—he had not such confidence in his honesty, as would have induced him to place implicit faith in any of his actings and doings in relation to the assignment. In fact it would seem that instead of indulging the presumption that the defendant was acting fairly, he would be disposed to put a very different construction upon his acts, especially when he left out of the assignment the very slaves which had been sold to him by the plaintiff, and for which these notes were given.

Upon the whole, admitting that the assignment was subject to attack on the ground of fraud, and that the fraud in procuring the discharge and thus preventing the plaintiff from bringing his suit, would stop the running of the Statute, so long as the fraud was not and could not by reasonable diligence have been detected, yet we believe this suit should have been brought, at the latest, within four years after the assignment in bankruptcy. The plaintiff had abundant means of detecting the fraud, from the date of its perpetration, and he cannot be permitted to slumber unreasonably upon his rights after such detection or means of detection. Time regards not the action of man. It shrouds them all alike in mystery, whether they be honest or fraudulent, whether they be peaceful or torti-

ous. Hence the necessity of settling human controversies promptly, while the witnesses and evidence remain by which the very truth and justice of transactions can be ascertained.

With respect to the allegation that the property conveyed to Harriet S., the wife, remained community property, it will suffice to say that such is the presumption of law, and the plaintiff should have insisted, at the time, that it should be included in the assignment. This could not have been refused unless on clear proof that the property was bought with the separate funds of the wife.

The plaintiff alleges that he did not discover the fraud until within three months prior to the suit. But the facts show, that with any care he might have detected the frauds shortly after they were committed, had he exercised the diligence which the law requires of those who would protect their rights.

Upon the whole we are of opinion that the demurrer was properly sustained, and it is ordered that the judgment be affirmed.

Judgment affirmed.