HORACE OLDHAM ET AL. V. GEO. MEDEARIS ET AL.

Decided March 25, 1897.

1. Partition—Suit to Correct Mistake—Limitation.

By mutual mistake in a partition of land it was unequally divided and each occupied the respective portion assigned to him more than fifteen years before the mistake was discovered. The facts excusing the delay of the party prejudiced in discovering the mistake, the statutes of limitation did not run against an equitable suit to correct such mistake and re-partition the land. (Pp. 507, 508.)

2. Findings of Fact—Presumption as to Evidence.

It was found as a fact by the trial court that "O., being ignorant and illiterate, was not negligent in not discovering the said shortage (in land set aside to him in partition) sooner." Upon appeal, without a statement of facts, such finding should not be treated as based exclusively upon the fact that O. was ignorant and illiterate, and should be presumed to be supported by the evidence. (P. 508.)

3. Same.

Findings of fact should state only facts, and not the evidence from which the court finds them; and they will be presumed correct unless the party seeking a revision of such finding brings up the evidence in the mode prescribed by law. Only when he undertakes to do so, is the adverse party called upon to see that the evidence in support of the finding is fully and correctly stated in the record, unless it be in a case where the finding purports to set out all the evidence on which it is based. (P. 508.)

QUESTIONS CERTIFIED from the Court of Civil Appeals, Third District, in an appeal from Travis County.

*J. W. Maxwell, J. Bouldin Rector* and *Rector & Rector,* for appellants.

*Geo. S. Walton, M. C. Granberry* and *J. J. Faulk,* for appellees.

DENMAN, ASSOCIATE JUSTICE.—We will only state such of the facts contained in the certificate as we deem pertinent to the questions certified.

On January 12, 1872, Horace Oldham and George Medearis purchased jointly a tract of land supposed by them to contain 380 acres, it being community property between them and their respective wives; and thereafter, having sold off 100 acres, they verbally partitioned the remainder, which they supposed to be 280 acres. In making such partition they employed a competent surveyor to run the division line, and such line was run with the intention, on the part of Oldham, Medearis and the surveyor, of giving to each 140 acres of land, it being of uniform value, and each believed that the line so run gave to each 140 acres. The land partitioned however, did not contain as many acres as the parties believed, and owing to a mistake of the surveyor Medearis got 140 acres, but Oldham only received 104 acres in said partition. Upon the making of the partition each of the parties with his family moved upon and actually enclosed and occupied as their homestead the land so set aside to him and continued such occupancy for more than fifteen years before Oldham discovered by a resurvey in 1893 that he had received in the partition only 104 acres. It appears that after the discovery of the mistake Oldham and Medearis, in October, 1893, entered into an agreement to ar-

bitrate their differences, and that the arbitrators made an award, but the
nature of the agreement and award is not stated in the certificate.   Old-
ham and others brought this suit against George Medearis and his wife,
seeking to enforce the award and praying in the alternative for a repar-
tition.   The defendants among other things pleaded the three, five and
ten years' statutes of limitation.   Plaintiffs filed a supplemental petition,
the nature of which is not set out, but as the certificate states that the
"pleadings of the parties raised the issues hereinafter stated and certified,"
we will assume that it set up facts excusing the delay in the discovery of
the mistake.

The first question certified is:   "If Horace Oldham exercised due dili-
gence in discovering the mistake in the partition of the land and the
shortage in the land set apart to him, will the statutes of limitation ap-
ply and run against an equitable suit to correct said mistake and re-par-
tition the land?"

In Brooksbank v. Smith, 2 Younge & Coll., 58, decided in 1836, Alder-
son B. held that statutes of limitation did not begin to run until the
mistake was discovered, saying:   "Then, is the statute of limitations a
bar to the remedy sought by this bill?   It seems to me that it is not so.
The statute does not absolutely bind courts of equity, but they adopt it
as a rule to assist their discretion.   In cases of fraud, however, they hold
that the statute runs from discovery, because the laches of the plaintiff
commences from that date, on his acquaintance with all the circum-
stances.   In this, courts of equity differ from courts of law, which are
absolutely bound by the words of the statute.   Mistake is, I think, with-
in the same rule as fraud."   Citing this case as authority, in speaking of
the statute of limitations, Story in his work on Equity Jurisprudence,
volume 2, section 1521a, says:   "In cases of fraud or mistake it will begin
to run from the time of the discovery of such fraud or mistake and not
before."   The same doctrine is held in Grundy v. Grundy, 12 B. Mon-
roe, 269, decided in 1851.   In Smith v. Fly, 24 Texas, 345, decided in
1859, this court, through Wheeler, C. J., said:   "In equity, as at law,
the general rule is, that the cause of action arises whenever the party is
entitled to bring suit; or as soon as he has a right to apply to a court of
equity for relief.   2 Story, Eq., sec. 1521a.   In cases of fraud and mis-
take, it will not begin to run until the time of the discovery of the fraud
or mistake.   Id.   Whether fraud or mistake will be admitted, as an ex-
ception to the running of the statute is an open question in this court.
Smith v. Talbot, 18 Texas, 782; Mason v. McLaughlin, 16 id., 29."   He
then proceeded to dispose of the question by holding that the petition did
not set up a sufficient excuse for the failure to discover the mistake in
order to bring the case within the rule.   In Munson v. Hallowell, 26
Texas, 475, decided in 1863, this court, in an elaborate opinion by Judge
Moore, held that in a proper case fraud would be admitted as an exception
to the running of the statute.   In Rowe v. Horton, 65 Texas, 89, in an
opinion by Chief Justice Willie, referring to Smith v. Fly and Story's
Equity Jurisprudence, supra, this court seems to recognize the rule stat-

ed by the authorities above cited, in so far as they apply them in cases of mistake, as being applicable in this State; for it was there held that the petition did not state facts sufficient to excuse the delay in discovering the mistake, and therefore the exception raising the question of limitation was properly sustained. While the authorities do not seem to be uniform in holding that courts of equity will suspend the statute in cases of mistake as they do in cases of fraud, we feel that the course of decision in this State is such that we are bound thereby, and therefore answer the above question in the negative. These exceptions so long recognized by the courts must be presumed to have been well understood and acquiesced in by the Legislature in the enactment of the statutes of limitation, or else they would have been negatived. Munson v. Hallowell, 26 Texas, 481. Davis v. Andrews, 88 Texas, 524.

The tenth paragraph of the trial court's findings of fact is as follows: "Horace Oldham, being ignorant and illiterate, was not negligent in not discovering the said shortage sooner." The second question certified by the Court of Civil Appeals is as follows: Is the trial court's finding in the tenth paragraph of the findings—that Horace Oldham, being ignorant and illiterate, was not negligent in not discovering the said shortage sooner—to be considered and treated as a finding based exclusively upon the fact of Horace Oldham being ignorant and illiterate? And if this court should be of the opinion that the mere ignorance and illiteracy of said Oldham do not show that he was not negligent in failing to discover the shortage sooner, can the presumption be indulged, in the absence of a statement of facts, that there was other evidence than that set out in the court's findings bearing upon that question?" In the findings of fact should be stated only the facts established by the evidence, and not the evidence from which the court finds such facts. A fact stated by the court in such findings must, in the absence of a statement of facts, be presumed to have support in the evidence adduced on the trial, just as would the verdict of a jury in a like case. The presumption of law is in favor of the correctness of the action of the trial court, and it is incumbent upon the party seeking revision of such finding in the Appellate Court to bring up the evidence in the mode prescribed by law. When he undertakes to do so, then and only then, is the adverse party called upon to see that the evidence adduced on the trial in support of such finding is fully and correctly stated in the record. The rule may be different in a case where the finding of the trial court purports to set out all the evidence upon which it is based. The parties in this case having it thus in their power to have brought up the entire evidence, it being incumbent upon the party attacking the finding to do so, and it not appearing affirmatively from the finding that it was based solely upon the recited circumstance of Oldham's "being ignorant and illiterate," it must be presumed in support thereof that there was other evidence. It results that we must answer the first portion of the above question in the negative and the last in the affirmative. This conclusion renders it unnecessary to state or answer the third question certified.