### GULF PRODUCTION CO. et al. v. PALMER et ux. (No. 573.)

(Court of Civil Appeals of Texas. Beaumont. April 22, 1921. Rehearing Denied May 16, 1921.)

**1. Judgment ☞743(2) — Claim of limitation held merged in judgment fixing parties' claims to land.**

If it be conceded that, as between plaintiffs and certain others, the former had perfected a title by limitation to the two tracts of land before making a settlement with the latter in another action, then this limitation claim was merged into the judgment, and plaintiffs could assert no rights thereunder without first correcting the judgment, which erroneously described the land, where they had not, since judgment, perfected title by limitation.

**2. Action ☞46—Legal plea of trespass to try title may be united with equitable plea to reform description of land in a judgment.**

Under our system of pleading, it was permissible to combine the legal plea of trespass to try title with the plea in equity to reform a judgment, by making it properly describe land the title to which is questioned, though they are distinct, separate causes of action.

**3. Trespass to try title ☞10—Party may recover if holding superior, legal, or equitable title.**

In trespass to try title, one can recover if he holds the superior title, whether legal or equitable.

**4. Trespass to try title ☞4—Party with equitable title may not assert it in trespass to try title where an erroneous judgment stands as a legal impediment, and should be reformed.**

Although the equitable title to land was in plaintiffs, they could not assert title nor defend under it without first reforming a judgment which, through mistake in description of land, placed title in others, and thus stood between them and their title, without first reforming such judgment to make it reflect the actual terms of the agreement which was embodied in a judgment to which plaintiffs were parties.

**5. Limitation of actions ☞39(5)—Action to reform judgment for misdescription of land barred in four years unless statute is tolled.**

An action to reform a judgment which misdescribed land through mistake comes within the statute of limitation of four years, and is barred after such time unless facts pleaded are sufficient to toll the statute.

**6. Limitation of actions ☞96(2) — Mistake bars running of statute only until discovered, or until it might have been discovered by diligence.**

A mistake in description of land in a judgment only prevents the running of the statute of limitations until the mistake is discovered, or, by the use of reasonable diligence, it might have been discovered.

**7. Evidence ☞66—It is a presumption of law that a party knew the contents of a judgment entered in his favor.**

It is a presumption of law that a party to an action knew the contents of a judgment therein entered in his favor, and such presumption is aided by the fact that he personally went with his antagonist's attorney to the courthouse, where, in his presence, such attorney stated the terms of the agreement to the court which rendered the judgment.

**8. Limitation of actions ☞197(2) — Evidence held to show that party in whose favor an erroneous judgment was rendered either actually knew its terms or in the exercise of care should have known them.**

Where a party went with his antagonist's attorney before the court, and had a judgment entered in accordance with a compromise and settlement, which judgment erroneously described the land the title to which was involved, evidence *held* to show that the party either actually knew of the terms of the settlement, as stated to the court, or in the exercise of due care should have known them.

**9. Limitation of actions ☞96(2)—Party held chargeable with notice of mistake in description of land in judgment from its date.**

Where a party to an action involving title to land procured a compromise and settlement, and there was nothing about the entry of the judgment to deceive him or lull him into false security, and no confidential relations existed between him and his adversary's counsel, and he went with counsel to the court where the compromise was stated and judgment entered, and without fraud on the part of any one, but in an honest effort to enter the judgment, a mistake was made in the description of the land, he must take notice of such mistake from its date.

#### On Rehearing.

**10. Appeal and error ☞1175(5)—Appellate court may render judgment for want of evidence.**

Where the testimony on the record as made does not raise the issue submitted to the jury, and the trial court should have instructed a verdict for the appellants, it is duty of Court of Civil Appeals to reverse the judgment of the trial court and render judgment, particularly

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

since it affirmatively appears from the record both on pleadings and evidence that appellees cannot strengthen their case on another trial.

**11. Appeal and error** ⟨key⟩1178(6)—**Cause will not be reversed to permit submission of issue which could not be raised.**

On appeal in an action involving title to land, a prayer for reversal of the judgment and the privilege of going to the jury on an issue of limitation will not be granted where it is impossible to raise such issue upon another trial.

**12. Judgment** ⟨key⟩660—**Parties having title to land by limitation and permitting entry of judgment excluding their title are as effectively estopped as they would be by deed.**

Conceding that parties had title by limitation to the land in question prior to the rendition of a compromise judgment which through erroneous description excluded such land, yet such judgment divested title out of them, and they are now estopped to claim under a prior deed including such land, and such judgment was as complete a bar to title by limitation based on that deed as if they had voluntarily conveyed it.

**13. Appeal and error** ⟨key⟩1027—**Construction of pleading to avoid limitations held not to avail plaintiff where such construction raised no issue of ownership.**

Plaintiffs' contention on rehearing, after a reversal of judgment in his favor, that the proceeding, which was in trespass to try title and to reform a judgment, was not to correct any error in the rendition of the judgment, but merely to correct an error in its entry, and that such cause of action was not subject to the four-year limitation, cannot avail where the pleadings under such construction would not raise any issue as to the ownership of the land in question.

**14. Judgment** ⟨key⟩505—**Judgment erroneous in not describing land as agreed by the parties must stand until reformed.**

The fact that a judgment as rendered did not follow the prior parol agreement of the parties would not make the judgment less binding, and, if different from the agreement through mistake, it would control so long as it was not reformed to show the parties' agreement, and any contention that the agreement must stand in place of the judgment is not well taken.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Action by L. P. Palmer and wife against the Gulf Production Company and others. Judgment for plaintiffs, and the defendant Company and some of the other defendants appeal. Reversed, and judgment rendered for the appellants.

Jno. E. Green, G. W. Tharp, and T. J. Lawhon, all of Houston, J. Llewellyn and Dan Harrison, both of Liberty, and Orgain & Carroll, of Beaumont, for appellants.

E. B. Pickett, Jr., of Liberty, and Jno. C. Townes, Jr., E. E. Townes, and Hugh F. Montgomery, all of Houston, for appellees.

WALKER, J. This suit involves 20 acres of the Chas. Underton survey in Liberty county. L. P. Palmer and wife were the plaintiffs. The other appellees and all the appellants were defendants. On the 22d day of July, 1885, one J. J. Moore conveyed to plaintiff Palmer 60 acres of land, part on the Chas. Underton, and the balance on the Jesse Devore, which lies immediately south of the Underton. On February 1, 1894, Moore conveyed to W. S. Swilley all the Underton survey "less 20 acres heretofore conveyed to L. P. Palmer by myself." This deed was filed for record February 21, 1894. Though referred to by Moore in that deed as "20 acres," by actual survey the tract he had conveyed to Palmer off the Underton contained only 13.28 acres. On the 4th day of January, 1908, Moore executed and delivered to Palmer another deed conveying him by metes and bounds another tract of land on the Underton, containing 5.2 acres of land. This deed recited that it was "for the purpose of correcting a deed heretofore executed by me [J. J. Moore] to L. P. Palmer on the 14th day of March 1894. * * * It is understood that the intention of this deed is to correct that certain deed given by J. J. Moore to L. P. Palmer attempting to convey the land conveyed herein, wherein a mistake was made in the description of said land." Palmer entered upon that part of the Underton survey conveyed to him by Moore in his first deed about the date of his purchase, improved, cultivated, used, and enjoyed it as his home. Also he used and enjoyed the 5.2 acres, and also had under fence a few acres of the Underton, in addition to these two tracts. On June 1st, after he had bought the Underton survey from Moore, Swilley leased it to Palmer, describing it as being "all that certain piece or parcel of land situated in Liberty county, Tex., being 300 acres out of a 320-acre survey originally granted to Chas. Underton, * * * the other 20 acres in this survey already owned by the said L. P. Palmer." Palmer testified that he held this land for Swilley under this lease from its date until 1913. On the 28th day of January, 1905, Mrs. Mattie B. Phillips, joined by her husband, filed suit in Liberty county against Palmer and Swilley, in the form of trespass to try title, to recover the entire 320 acres Underton survey. This suit was styled Phillips v. Palmer, No. 1328. Palmer answered, disclaiming as to all of the survey except that part conveyed to him by Moore in the deed dated the 22d day of July, 1885, describing the land claimed under this deed by metes and bounds, and as containing 20 acres

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of land, though in fact, as above stated it contained only 13.28 acres. Swilley answered, disclaiming as to that particular tract claimed by Palmer, also describing by metes and bounds the Palmer tract just as Palmer described it in his disclaimer, and referring to it as containing 20 acres of land. Palmer and Swilley each further answered by cross-actions for affirmative relief as to the lands claimed by them. These answers were filed on March 5, 1905. On trial of this cause, No. 1328, judgment was rendered for the defendants. The plaintiffs appealed, and the cause was reversed and remanded for a new trial. See Phillips v. Palmer, 56 Tex. Civ. App. 91, 120 S. W. 911. Without an amendment of the pleadings by these defendants, this cause came on again for trial on the 11th day of June, 1913. On that day Palmer settled his part of the controversy with L. A. Kottwitz, attorney for Mrs. Phillips and her husband. As setting forth the terms of the agreed settlement between Mrs. Phillips and Palmer, Judge Llewellyn, before whom the case was being tried, entered the following order on his docket:

"6/11/13. Interlocutory agreement in favor of L. P. Palmer for the 20 acres claimed by him and described in his cross-bill."

The cause then came on for trial between the plaintiffs and Swilley, and final judgment was entered on the 12th day of June, 1913. As an adjudication of the rights of Palmer, the judgment so entered recited:

"On this 12th day of June, 1913, came on the plaintiffs, Mrs. Mattie B. Phillips, and her husband, Morris Phillips, and the defendant, L. P. Palmer, into open court and made the court understand that by settlement, adjustment, and agreement the said L. P. Palmer, a party defendant, should have judgment for the land sued for on his plea in reconvention, which land is fully described in his said plea in reconvention. It is therefore ordered, adjudged, and decreed by the court that the plaintiffs take nothing by their suit against the said L. P. Palmer, on the following described land, and that said L. P. Palmer does have and recover of plaintiffs the following described tract of land, to wit: 20 acres out of the Chas. Underton survey in Liberty county, Tex., and described more particularly as follows. * * *"

But the land adjudged to Palmer by metes and bounds was not the land claimed by him in his answer and conceded to him by Kottwitz in the agreed settlement and by Swilley in his disclaimer, but was an entirely different tract of land. This error, however, was occasioned by a pure mistake, and was in no way induced by fraud. There is no question as to the mistake in the entry of the judgment on the minutes of the court. It is the contention of appellants that the entry on the judge's trial docket correctly stated the agreement between Kottwitz and Palmer, but, in deference to the verdict of the jury,

we find that the real agreement was that Palmer should recover 20 acres of land, to include the two tracts theretofore deeded to him by Moore, and enough additional land lying north of these two tracts to make exactly the 20 acres. His petition sets forth, by metes and bounds, the land claimed by him under the agreement with Kottwitz, and we find that the land so described in plaintiffs' petition was the land that Mrs. Phillips, through her attorney, agreed should be awarded to Palmer. As grounds for tolling the statute of limitation, plaintiffs plead:

"That there had been such a serious mistake made in the drafting and entry of said judgment plaintiffs did not discover until about the month of December, 1918, and the fact that such mistake was not sooner discovered cannot be charged to and was not due to any failure on the part of plaintiffs, or either of them, to use ordinary care or reasonable diligence to discover the same, but in this connection the facts are, and plaintiffs further allege, that at the time said cause No. 3812 was compromised and settled as above alleged no definite time was set or agreed upon within which the said 20 acres to be decreed to plaintiffs in accordance with said agreement and settlement was to be surveyed and its actual location thereby definitely determined, nor in making such settlement was it agreed who should survey the land nor that such survey should be made promptly or without delay; but at the time of making such agreement it was known, as above alleged, by all the parties to said agreement, that the plaintiffs herein at that time were actually occupying and had inclosed with a fence not only a part of the 20 acres which was to be decreed to them, but also an additional portion of said Underton survey which would adjoin such 20 acres when its location was definitely determined by a survey of same, and further the understanding of plaintiffs at that time with the said Mrs. Mattie B. Phillips and Morris Phillips, acting by their said attorney, L. A. Kottwitz, was that plaintiffs might continue to use such additional portion of the Underton survey so occupied and inclosed by plaintiffs' fence until the lines of plaintiffs' 20 acres were actually run and located by a survey thereof; and the plaintiffs herein, preferring to have the said 20 acres surveyed by the county surveyor of Liberty county, Tex., did on various occasions apply to H. O. Compton, then and now county surveyor of Liberty county, to make a survey of said 20 acres, but, being engaged with other duties, the said Compton from time to time postponed making such survey for plaintiffs, and again on different occasions they would call his attention to the matter and request him to make the survey at his first opportunity, and upon every occasion when they so requested him to make such survey the said Compton promised plaintiffs to do so, and they relied upon his assurance that he would at his first opportunity make such survey; and at no time did the said Mrs. Mattie B. Phillips and Morris Phillips, or their said attorney, L. A. Kottwitz, or any person whomsoever, request plaintiffs to have said survey sooner made or request of plaintiffs that they withdraw their fences from that portion

of the Underton survey surveyed for plaintiffs as above alleged, nor did the said Mrs. Mattie B. Phillips, Morris Phillips, or L. A. Kottwitz, or any one whomsoever, at any time complain to plaintiffs that the actual location of said 20 acres definitely should be determined without further postponement, or that there was any need or reason why the actual survey and location of said 20 acres ought to be immediately, or within any stated time, made and the lines of said 20 acres definitely determined and marked upon the ground, and plaintiffs during all that time recognized and regarded as binding upon them the agreement to withdraw their fences from that portion of the Underton survey which would not be included in the said 20 acres when the lines of such 20-acre tract were definitely determined by a survey thereof, and promptly after they were able to secure the said H. O. Compton to make a survey of the said 20 acres and locate the lines thereof plaintiffs complied with and fulfilled their said agreement by withdrawing their fencing from that portion of the said Underton survey north of the said 20 acres and placing their fences upon the lines of the 20-acre tract, and until about the month of December, 1918, the plaintiffs were not aware of the mistake in said judgment which was entered in said cause No. 3813, but assumed and felt satisfied that a judgment decreeing to plaintiffs 20 acres of said Underton survey had been correctly and properly prepared and entered, in accordance with the said agreement made between the plaintiffs in said cause No. 3813, Mrs. Mattie B. Phillips and Morris Phillips and L. P. Palmer, defendant herein, for the compromise and settlement of said suit and controversy as between said plaintiffs and this plaintiff L. P. Palmer, and during all of said time nothing had occurred to in any manner indicate to plaintiffs herein that such a correct and proper judgment had not been prepared and entered in said cause No. 3813, and plaintiffs herein had no occasion or necessity for ever turning to or examining such judgment for any purpose, and after making said agreement for the compromise and settlement of said cause No. 3813, with the plaintiffs therein, Mrs. Mattie B. Phillips and Morris Phillips, said plaintiffs in that suit, nor any one else, ever questioned the right or title of these plaintiffs to the said 20 acres of land which was to be and should have been decreed to L. P. Palmer as a defendant in said cause No. 3813 in accordance with the compromise and settlement made and agreed upon by and between him and the plaintiffs in said cause, and no claim of any nature to any part of said 20 acres of land was thereafter made or asserted by any one, so far as known to these plaintiffs, until about one month prior to the filing of this suit."

Plaintiff's testimony was in line with and supported his allegations of fact as made in this quoted paragraph of his petition, and, in deference to the judgment of the court, we find as true all the allegations of fact stated in this quoted paragraph of plaintiff's petition. But we are not adopting as true his conclusions from these facts; for instance, his conclusion "that such mistake was not sooner discovered cannot be charged to and was not due to any failure on the part of plaintiffs or any of them to use ordinary care or reasonable diligence to discover the same." In addition to the facts set forth in the quoted paragraph of plaintiff's petition, we adopt as true the following testimony of Palmer:

"Prior to 1913 Mrs. Phillips and her husband filed suit against me. Mr. Swilley was the other defendant. I know Mr. Tharp, who was an attorney in that case. We tried that case three times before settlement was made by Mr. Kottwitz with me. I made a settlement in June, 1913, in so far as the controversy was between Mrs. Phillips and myself as defendant. In making that settlement with Mr. Kottwitz I did my own talking. While that suit was pending on or about the 13th day of June, 1913, I make a trade with Mr. Kottwitz. I gave him $100 to give me a judgment for 20 acres in that suit. I had talked with Judge Stevens, one of the attorneys for Mr. Swilley. Judge Stevens advised me he believed it would be well for me to give $100, and I talked with H. E. Marshall, and he advised it. Then I returned and talked further with Mr. Kottwitz, and I told him if he would give me a judgment I would give him $100, and he said he would do it, and said he would give me a judgment for 20 acres out of the Charles Underton survey. We were in the town of Liberty at the time. I don't know exactly where we were when we agreed on it. The case was going to come up that day. After we made the agreement Kottwitz said, 'Well, give me the hundred,' and I says, 'You have got to go and ask him to give me a judgment for 20 acres.' I said, 'I will give you the $100,' and we came over and talked with Judge Llewellyn, who was on the bench, and he [Kottwitz] asked him [Llewellyn] to give me a judgment for 20 acres, and I went to the bank then and gave him the $100. After that I did not consider myself in the case any further."

In addition to the above statement of facts, we should add that plaintiff pleaded the usual allegations in trespass to try title and the different statutes of limitation, together with a special plea for the correction of the judgment as entered on the minutes of the court under the agreed settlement between Kottwitz and Palmer. Appellants disclaimed as to the 13.28 acres of land conveyed to Palmer by Moore by the deed dated the 22d day of July, 1885, and, by appropriate pleas, put in issue the title to the remaining 6.72 acres claimed by plaintiff in his petition. Judgment was for plaintiff for the relief prayed for.

Many interesting questions are presented by appellants, but we shall discuss only the assignments presenting error in refusal of the trial court to instruct a verdict in their favor.

[1] Plaintiffs could not recover on their pleas of limitation. If it be conceded that, as between him and Swilley and Mrs. Phillips, he had perfected a title by limitation to the two tracts of land deeded to him by Moore, before the settlement of June 11,

1913, yet this limitation claim was merged into the judgment, and he could assert no rights thereunder without first correcting this judgment. Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094. And since the rendition of that judgment he has not perfected another title by limitation.

[2] Nor could he recover on his plea in trespass to try title. Under our system of pleading, it was permissible to combine the legal plea of trespass to try title with the plea in equity to reform the judgment; yet they are distinct and separate causes of action. Haskins v. Wallett, 63 Tex. 218; Moore v. Snowball, 98 Tex. 25, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596.

[3] On the plea in trespass to try title one can recover if he holds the superior title, whether legal or equitable. Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203. Under this plea he can show such title by an outstanding deed or judgment, or by facts which in equity are sufficient to vest in him the superior title, but only if there be no outstanding deed or judgment standing as an obstacle to his recovery; that is, a deed or judgment vesting the legal title in some one else, to which he is a party or a privy. If there is such a deed or judgment standing between him and his title, then he cannot recover on his legal plea, but must resort to equity to remove this hindrance to his title. Railway Co. v. Titterington, 84 Tex. 225, 19 S. W. 472, 31 Am. St. Rep. 39; Hamilton v. Green, 166 S. W. 97; Grundy v. Greene, 207 S. W. 964; Ayers v. Duprey, 27 Tex. 604, 86 Am. Dec. 657; Sanborn v. Crowdus, 100 Tex. 608, 102 S. W. 719; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315; Rippetoe v. Dwyer, 49 Tex. 505; Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59; Fisher v. Wood, 65 Tex. 204; Gilmore v. O'Neil, supra.

[4, 5] Now in this case the judgment of date June 12, 1913, vested the legal title to the 6.72 acres of land in controversy in Swilley and Mrs. Phillips. Under the facts found by us, the equitable title was in Palmer, but he could not assert this title nor defend under it without first reforming the judgment which stood between him and his title, so as to make it reflect the actual terms of the agreement. There are these distinctions between this case and Gilmore v. O'Neil: In that case the holders of the superior title—theirs by equity—paid for the land, entered upon it, and made most valuable improvements thereon, thus making their equitable title active and one that the courts could enforce. In this case Palmer paid for the land, but made no improvements thereon after such payment and after the agreed judgment. Again in this case there was an outstanding judgment, to which Palmer was a party, vesting the title in this 6.72 acres of land in his adversaries.

No such impediment existed in Gilmore v. O'Neil. It follows then, under McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, that Palmer could not recover on his equitable title, but must first reform this outstanding judgment. An action for this purpose comes within the statute of limitation of four years, and plaintiff's cause of action was barred unless the facts pleaded by him are sufficient to toll this statute of limitation.

[6-8] Mistake only prevents the running of the statute until the mistake is discovered, or by the use of reasonable diligence it might have been discovered. Oldham v. Medearis, 90 Tex. 506, 39 S. W. 919. The mistake was made on the 11th day of June, 1913, and carried into the minutes of the court on the next day. It was not discovered until the fall of 1918. This mistake was patent. A casual inspection of it by an unlearned man, as this record shows Mr. Palmer was, would have disclosed the mistake. The presumption of law is that Palmer knew the contents of the judgment entered in his favor. Watrous v. Rodgers, 16 Tex. 411. This presumption is aided by the fact that Palmer went with Kottwitz to the courthouse, and in his presence Kottwitz stated the terms of the agreement to the court. The trial court at that time entered on his docket the order above quoted by us in favor of Palmer for the lands claimed by him in his cross-action, and conceded to him by Swilley. No issue is made against the fact that the judge entered the agreement as it was stated to him by Kottwitz at that time. There is no suggestion that he could have received the information on which this order was made except at the time when Palmer and Kottwitz went to the courthouse to have the agreement entered. Palmer's testimony above quoted by us fully sets forth the facts and circumstances surrounding the entry of this judgment. It is also disclosed from this testimony of Palmer that he did not leave the entry of this judgment to Kottwitz, but refused to pay him until they went together to the courthouse to have the agreed decree entered. What could it benefit Palmer if he did not hear the announcement made to the court by Kottwitz? He went to the courthouse for that purpose. He undertook himself to see that Kottwitz made a correct statement to the court of the terms of the settlement. He offers no excuse for not hearing it. After going to the courthouse with Kottwitz, under Palmer's own testimony, if he did not hear what was said by Kottwitz to the court, he was not in the exercise of due care to protect his interests. Being negligent in this respect, his failure to hear and understand what was said to the court by Kottwitz could not toll the statute. In this connection it must be borne in mind that Kottwitz and Palmer were act-

ing in the utmost good faith, and such omission on Palmer's part, if he did not hear the announcement of the court, was not occasioned in any way by any conduct on the part of Kottwitz. If Palmer did hear the announcement made to the court—that his part of that suit was to be adjudicated by decreeing to him the 20 acres of land claimed by him in his cross-bill—certainly he was visited with immediate notice of the mistake, because the mere statement of such terms excluded the 5.2-acre tract and the 1.52-acre tract which he claimed was to be awarded to him in addition to the land claimed in his pleadings. Knowing of the mistake, he could not toll the statute by afterwards forgetting it. And we hold, on the testimony of Palmer himself, either that he actually knew the terms of the settlement, as stated by Kottwitz to the court, or, in the exercise of due care, should have known them.

[9] But, apart from this, as between him and Mrs. Phillips, Palmer's title to this 20 acres of land rested upon this settlement. Holding under this judgment, the law vested him with notice of its terms and conditions. There was nothing about the entry of the judgment to deceive him or to lull him into a false security. No confidential relations existed between him and Kottwitz. He reposed no special confidence in Kottwitz. The only time such a confidence was called for was at the time of the entry of the judgment, and he refused to rest that with Kottwitz, but went himself to see that it was correctly entered. He did not request Kottwitz to protect his interests in the entry of the final judgment, but immediately on the entry of this agreement, at a time when the case was not closed, abandoned all further interest in the case, and, though he was represented by attorneys, did not ask them to protect his interests in the entry of the judgment. It appears from his testimony that in this settlement he did his own "talking." Certainly on these facts one could not be in the exercise of ordinary care in thus abandoning his case and leaving his interests to be protected by his adversaries who dealt with him in perfect good faith. And when, without fraud on their part, and in an honest effort to enter a judgment in conformity with an agreement, a mistake was made, he must take notice of such mistake from its date.

We do not see how he can be aided by the fact that under the agreement he was to have the land surveyed; that no time was agreed upon when it was to be surveyed; that he was in possession of the land; and that there was no immediate necessity for a survey. Rather it seems to us that these facts militate against his plea. It was to his interest to know the boundaries of his land. It was to the interest of his adversaries that they be given possession of their lands. As claimed by him, he assumed the duty of marking out his lands, and then surrendering to Mrs. Phillips such of her lands as he had under fence. Certainly the exercise of ordinary care on his part required that this be done in a reasonable time. His long delay in having this land surveyed was an affirmative act of negligence against him.

As sustaining us in holding that Palmer's cause of action is barred by limitation, we cite Watrous v. Rodgers, 16 Tex. 511; Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 348; Hamilton v. Blackburn, 95 S. W. 1099, 43 Tex. Civ. App. 153; Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1040; City of Goliad v. Weisiger, 4 Tex. Civ. App. 653, 23 S. W. 694; Bass v. James, 83 Tex. 110, 18 S. W. 336; Holt v. Love, 168 S. W. 1019; Hamilton v. Green, 166 S. W. 97; Kuhlman v. Baker, 50 Tex. 636; Alston v. Richardson, 51 Tex. 1; Calhoun v. Burton, 64 Tex. 515; Rowe v. Horton, 65 Tex. 89; Campbell v. Wyatt, 217 S. W. 743; Wood v. Carpenter, 101 U. S. 138, 25 L. Ed. 807.

Appellees attempt to bring the facts of this case within the rule announced in. Cooper v. Lee, 1 Tex. Civ. App. 9, 21 S. W. 1001; Smith v. Talbot, 18 Tex. 783; Smith v. Fly, 24 Tex. 353, 76 Am. Dec. 109; Oldham v. Medearis, 90 Tex. 507, 39 S. W. 919; Harris v. Flowers, 21 Tex. Civ. App. 669, 52 S. W. 1047; American, etc., Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 384; Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 57; Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970; Stone v. Burns, 200 S. W. 1122; Smalley v. Vogt, 166 S. W. 1; Riggs v. Pope, 3 Tex. Civ. App. 179, 21 S. W. 1013; Payne v. Ross, 10 Tex. Civ. App. 419, 30 S. W. 670; Gillispie v. Gray, 214 S. W. 731; Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203; 25 Cyc. pp. 1186, 1192, and 1195.

In announcing the general principles applicable to the statute of limitation as applied to deeds and judgments, we do not understand that there is any conflict between appellees' authorities and those above cited by us as sustaining our position. However, the facts in some of appellees' cases are quite different from the facts in this case, and hence the distinctions made in those cases cannot control this case. We believe these facts come clearly within the authorities on which we rely.

If we are correct in what we have said, it follows that the judgment of the trial court in favor of appellees must be reversed, and judgment here rendered for appellants, and it is accordingly so ordered.

### On Rehearing.

On this rehearing, appellees challenge the judgment of this court in reversing the judgment of the trial court and rendering

judgment for appellees, on the following grounds:

[10] (1) This court is without authority to review findings of a jury and make affirmative findings for appellees.

This proposition is sound where the finding is against the great weight and preponderance of the testimony, but where, as in this case, the testimony does not even raise the issue submitted to the jury, and on the record as made it was the duty of the trial court to instruct a verdict for appellants, it is our duty to reverse the judgment of the trial court and here render such judgment as should have been rendered on the facts and pleadings. This rule has direct application to this cause, because it affirmatively appears from this record, both on the pleadings and the evidence, that appellees cannot strengthen their case on another trial.

[11] (2) And in this connection they say that we should not render judgment for appellants, but should reverse the case so that they may have the privilege of going to the jury on their issue of limitation.

We would grant this prayer if it were possible to raise this issue on another trial. We held against this proposition in our original opinion. We there said:

"Plaintiffs could not recover on their pleas of limitation. If it be conceded that, as between him and Swilley and Mrs. Phillips, he had perfected a title by limitation to the two tracts of land deeded to him by Moore, before the settlement of June 11, 1913, yet this limitation claim was merged into the judgment, and he could assert no rights thereunder without first correcting this judgment. Hamilton v. Blackburn, 95 S. W. 1094. And since the rendition of that judgment he has not perfected another title by limitation."

[12] Appellees do not question the soundness of our original opinion in so far as it is supported by Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094, but they contend that Palmer has perfected a new title by limitation under the five-year statute since the rendition of the Phillips-Palmer judgment. We cannot agree with them in this contention. If we concede that Palmer was in possession of the 5.2 acres prior to the rendition of the Phillips-Palmer judgment, under circumstances meeting the full measure of the five-year statute, and thereby had perfected a title under that statute, yet that old judgment divested title out of him, and he is now estopped to claim under the deed from Moore conveying him this 5.2 acres. The judgment so entered was as complete a bar to a title by limitation based on that deed as if he had voluntarily conveyed it. Fisk v. Miller, 20 Tex. 579; Voight v. Mackle, 71 Tex. 78, 8 S. W. 623; Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1088; Daugherty v. Yates, 13 Tex. Civ. App. 646, 35 S. W. 939; Smith v. Bunch, 31 Tex. Civ. App. 541, 73 S. W. 563; Shaw v. Thompson Bros. Lbr. Co., 177 S. W. 574. With this judgment outstanding against him, Palmer could only mature a title under the ten-year statute. As he was not in possession of the land ten years subsequent to the entry of the Phillips-Palmer judgment, no issue under the claim of limitation could be raised on another trial.

[13] (3) They now advance this proposition:

"This suit was not brought to correct any error of the court in the rendition of said judgment of district court, but the suit was brought for and the plaintiff prays for the correction of an error made in the entry of the judgment rendered by the court upon the records of the court to the end that the records of the court will correctly show the judgment of the court actually rendered on the agreement of the parties to the suit; and the four-years statute of limitations has no application to this suit."

Under Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1040, the principle of law invoked in this proposition is sound. Conceding, for the sake of argument, that appellees now suggest the proper construction of their pleading (though this was not their position on original submission), it cannot afford them relief. The judgment actually rendered by the court was "in favor of L. P. Palmer for the 20 acres claimed by him and described in his cross-action." Thus the judgment actually rendered by the court did not include the 5.2 acres, nor the 1.52 acres. If appellees only pray that the judgment entered on the minutes be made to reflect the actual judgment rendered by the court, they now have all the relief that could be granted them, as appellants conceded them the 13.28 acres, and no appeal was taken from that part of the judgment. Under the construction now placed by appellees on their pleadings, no issue was raised as to the 5.2 acres nor the 1.52 acres, and on their pleadings judgment should have been entered for appellants by the trial court.

[14] We cannot follow appellees in the distinction they would draw between a judgment on trial and a judgment by agreement. If we understand their position, they contend that the docket entry upon a judgment by agreement is not evidence of the judgment rendered by the court; that the judgment so rendered is the actual agreement of the parties; that if a mistake was made in stating this agreement to the court, as a matter of law, the actual agreement must be the judgment rendered. Hence they claim, as this was a suit to make the minutes reflect the actual judgment rendered by the court, and as the judgment so rendered was the actual agreement made, and as the agreement made included the land in controversy, under the rule announced in Coleman v. Zapp, supra, they were entitled to

the relief prayed for, and "the four-year statute of limitation had no application to this suit." We do not so understand the law. A judgment by consent must be proven as other judgment, that is, by the entries made in the due prosecution of the suit, and, as said by Judge Neill, in Insurance Co. v. King, 31 Tex. Civ. App. 636, 73 S. W. 71:

"A final judgment on the merits is just as conclusive on the merits if entered by consent as if rendered after contest."

See, also, Anderson v. Wynne, 25 Tex. Civ. App. 440, 62 S. W. 121; Goliad v. Weisiger, 4 Tex. Civ. App. 653, 23 S. W. 694; Hamilton v. Blackburn, supra; State Bank of Indiana v. Young, 2 Ind. 171, 52 Am. Dec. 501.

Under the cases just cited, appellants advance the following proposition, which we approve as a correct statement of the law:

"The fact that the judgment as entered did not follow the parol agreement of parties made prior thereto would not make said judgment any less binding. If said judgment was different from the agreement, the judgment would control so long as it stood unreformed. The fact that the court rendered a judgment different from that agreed upon would not make said judgment any less effective, and until such judgment was reformed to meet the agreement of parties, said judgment will control, and not the agreement of parties."

The other propositions advanced by appellees on this rehearing are covered fully by our original opinion, and require no further discussion.

As appellants, by cross-actions, prayed for affirmative relief, and as the record before us shows that they own the record title to the land in controversy, we think we were correct in rendering judgment in their favor. The motions for rehearing are in all things overruled.